1  **THE WAND LAW FIRM, P.C.**
2  Aubry Wand (SBN 281207)
   100 Oceangate, Suite 1200
3  Long Beach, CA 90802
   Telephone: (310) 590-4503
4  Email: awand@wandlawfirm.com

5  **FARUQI & FARUQI, LLP**
   Lisa T. Omoto (SBN 303830)
6  1901 Avenue of the Stars, Suite 1060
   Los Angeles, CA 90067
7  Telephone: (424) 256-2884
   Email: lomoto@faruqilaw.com
8
   *Attorneys for Plaintiff and the Putative Classes*
9

10

11                  **UNITED STATES DISTRICT COURT**

12                  **EASTERN DISTRICT OF CALIFORNIA**

13

14
   | | |
   |---|---|
   MATTHEW HAWKINS, on behalf of himself
15 and all others similarly situated,

16          Plaintiff,

17      v.

18 WALMART INC., a corporation; and DOES 1
   through 10, inclusive,
19
            Defendant.
20

21

22

23

24

25

26

27

28

---

Case No.: 1:24-cv-00374-KES-SKO

**FIRST AMENDED CLASS ACTION COMPLAINT**

1. Violation of California Consumers Legal Remedies Act
2. Violation of California False Advertising Law
3. Violation of California Unfair Competition Law
4. Breach of Express Warranty (Cal. Com. Code § 2313)
5. Breach of Implied Warranty (Cal. Com. Code § 2314)
6. Intentional Misrepresentation

**DEMAND FOR JURY TRIAL**

Plaintiff Matthew Hawkins ("Plaintiff"), on behalf of himself and all others similarly situated, brings this class action against Defendant Walmart Inc. ("Defendant" or "Walmart"), and Does 1 through 10, based on Walmart's false and deceptive advertising and labeling regarding its Great Value Avocado Oil Products. Plaintiff makes the following allegations based on the investigation of his counsel, and on information and belief, except as to allegations pertaining to Plaintiff individually, which are based on his personal knowledge.

## INTRODUCTION

1.     During the statute of limitations period, Walmart has marketed, labeled, advertised, and sold its Great Value Avocado Oil (the "Class Product(s)") to consumers with packaging that has prominently represented that it is avocado oil.

2.     The Class Products' packaging unequivocally states that the oil is "Avocado Oil" (the "*Avocado Oil Claim*").

3.     Reasonable consumers believe, based on the *Avocado Oil Claim*, that the Class Products are only avocado oil and do not contain any other oils. However, this is not the case. Unbeknownst to consumers, the Class Products are adulterated with other oils.

4.     Plaintiff seeks relief in this action individually, and on behalf of all other similarly situated individuals who purchased the falsely and deceptively labeled Class Products during the statute of limitations period, for violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, breach of express and implied warranty (Cal. Com. Code §§ 2313-2314), and intentional misrepresentation (i.e., common law fraud).

## JURISDICTION AND VENUE

5.     Plaintiff takes no position on subject matter jurisdiction. Walmart removed this action and it contends that the Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). *See* ECF No. 1. ("Notice of Removal") ¶ 8; *see also Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it.").

6.      This Court has personal jurisdiction over Defendant Walmart because Walmart conducts substantial business within California, including the promotion, marketing, and sale of the Class Products in this State to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Specifically, Plaintiff resides in Columbia, California and purchased the Class Product in this District within the statute of limitations period.

## PLAINTIFF

8.      Plaintiff is a citizen of the United States and the State of California. He currently resides in Columbia, California.

9.      In or around August 2023, Plaintiff purchased a bottle of Walmart's Great Value Avocado Oil at a Walmart store in Sonora, California for which he recalls paying between $9 and $10. Plaintiff saw and relied on the *Avocado Oil Claim* in making this purchase. More specifically, Plaintiff reasonably believed, based on the *Avocado Oil Claim*, that he was buying only avocado oil. This belief was a fundamental part of his decision to purchase the Class Product. Had Plaintiff known that the Class Product is adulterated avocado oil, he would not have purchased it, or he would have paid less for it. Thus, Plaintiff has suffered injury in fact and lost money as a result of Walmart's misleading, false, unfair, and deceptive practices, as alleged herein.

10.     Plaintiff is unable and will be unable to rely on the Class Products' *Avocado Oil Claim* in the future as he lacks personal knowledge regarding, *inter alia*, Walmart's sourcing and production of the avocado oil, and so he will refrain from purchasing the Class Products in the future, although he would like to do so.  Plaintiff remains interested in purchasing avocado oil products that contain only avocado oil, intends on purchasing them in the future, and would consider purchasing the Class Products in the future if he knew the *Avocado Oil Claim* was accurate and truthful.

11.     As a result of Walmart's unlawful business practices, and the harm caused to Plaintiff and Class members, Walmart should be required to pay for all damages and/or restitution. However,

monetary compensation alone is insufficient to remedy the ongoing harm that is being caused to Plaintiff, and Class members, who are unaware of Walmart's deceptive conduct and will continue purchasing the Class Products, reasonably but incorrectly believing that they are getting only avocado oil. As such, injunctive relief requiring Walmart to cease its false and deceptive labeling practices with respect to the Class Products is necessary and appropriate.

## DEFENDANT

12.     Walmart is a Delaware corporation with its headquarters and principal place of business in Bentonville, Arkansas.

13.     Walmart has labeled and sold the Class Products at its retail stores, and via its ecommerce website, in California and the rest of the country, during the statute of limitations period under its private label brand, "Great Value." Walmart knows that consumers care about and rely on the claims that it makes about the ingredients in its products.

14.     As of January 31, 2025, Walmart operates 303 retail locations in California, as well as 17 distribution centers and four fulfillment centers.[1]

15.     The true names and capacities of Does 1 through 10, inclusive, are unknown to Plaintiff at this time, and Plaintiff therefore sues such Doe defendants under fictitious names. On information and belief, each Defendant designated as a Doe is in some manner highly responsible for the occurrences alleged herein, and Plaintiff's and Class members' injuries and damages, as alleged herein, were proximately caused by the conduct of such Doe defendants. Plaintiff will seek leave of the Court to amend this Complaint to allege the true names and capacities of such Doe defendants when ascertained.

## FACTUAL ALLEGATIONS

### A.     The Class Products

16.     The Class Products consist of Walmart's Great Value Brand Avocado Oil. The Class Products are generally sold in 25.5 oz. bottles. The *Avocado Oil Claim* is prominently displayed in the same manner on all Class Products, as set forth in the following representative image:

---

[1] https://corporate.walmart.com/about/location-facts/united-states/california (last visited on March 12, 2025).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16    **B.    The *Avocado Oil Claim* is False and Deceptive**

17         17.    As can be seen from the above image, the *Avocado Oil Claim* conveys the

18    unequivocal message that the Class Products are "Avocado Oil," meaning that the bottle contains

19    only avocado oil.

20         18.    Moreover, the front label depicts images of avocados, adding to the effect of the

21    representation.

22         19.    This message is reinforced by the ingredient list on the Class Products' back label,

23    which lists avocado oil as the only ingredient, as reflected in the following representative image:

24
25
26
27
28

-4-
FIRST AMENDED CLASS ACTION COMPLAINT



20.     Walmart does not disclose anywhere that the Class Products are adulterated with other oils,[2] and thus, consumers reasonably believe that the Class Products consist of only avocado oil based on the *Avocado Oil Claim*.

21.     The Class Products are not only avocado oil. To the contrary, based on Plaintiff's investigation, which includes testing and analysis of the Class Products performed by third party laboratories, and review of independent testing performed by researchers at University of California at Davis ("UC Davis"), the fatty acid and sterol profiles of the Class Products show that the Class Products are ***definitely not*** only avocado oil, and are indeed adulterated with other oils. Thus, the *Avocado Oil Claim* is false and deceptive.

**C.      The *Avocado Oil Claim* is Material**

22.     The *Avocado Oil Claim* is material—i.e., it is important to consumers with respect to their purchasing decisions of the Class Products.[3]

23.     Avocado oil is well-known to be one of the healthiest cooking oils. For example, studies have indicated that compounds in avocado oil may help protect the liver, lower blood pressure and LDL cholesterol, and reduce osteoarthritis-related joint pain, post-meal blood sugar,

---

[2] The testing shows material adulteration with other oils, not trace or *de minimis* amounts of unrelated ingredients that could be expected to accidentally make their way into the Class Products through, e.g., production on shared equipment.

[3] For instance, at 25.5 fl oz bottle of the Class Product costs $9.72, or $0.38 per ounce. By contrast, a 48 fl oz bottle of Great Value Canola Oil costs $4.33, or $0.09 per ounce. Similarly, a 48 fl oz bottle of Great Value Vegetable Oil costs $4.37, or $0.09 per ounce.

and total cholesterol levels.[4] It is also high in monounsaturated fat, which is considered more heart healthy than saturated fat while being slightly more stable than the polyunsaturated fats typically found in vegetable oils.[5] Avocado oil is also a high demand cooking oil because it has the highest smoke point of all plant-based cooking oils.[6] Each of these qualities, among others, lead consumers to pay a premium price for avocado oil as compared to other cooking oils like canola, peanut, safflower, soybean, and sunflower oils.

24.     Regardless of whether consumers believe avocado oil is in fact superior to other oils, the issue of whether the avocado oil is adulterated with other oils is material to reasonable consumers. Simply put, consumers of the Class Products reasonably expect to know what type of oil they are consuming.

25.     Consumers purchased, and continue to purchase, the Class Products in part because the *Avocado Oil Claim* conveys the unequivocal message that they are only avocado oil. Plaintiff and Class members would have paid less for the Class Products, or would not have purchased them at all, if not for the *Avocado Oil Claim*. Therefore, Plaintiff and Class members have suffered a financial injury in the form of paying a price premium that the Class Products command in the market as a result of Walmart's representations that they are only avocado oil.

**D.     The Class Products are Not Only Avocado Oil**

26.     Fatty acids are the chemical building blocks of fats, and sterols are certain organic compounds found in fats. Each type of cooking oil contains certain proportions of the various fatty acids and sterols. These proportions are expressed in the form of ranges, effectively creating a "fingerprint" identity of reference ranges unique to the oil.

27.     While samples of the same type of oil may have different precise proportions of a given fatty acid or sterol, and samples of different types of oils may have the same proportion of a

---

[4] https://www.healthline.com/nutrition/9-avocado-oil-benefits#TOC_TITLE_HDR_4 (last visited on March 12, 2025).

[5] https://www.masterclass.com/articles/what-is-avocado-oil-a-guide-to-cooking-with-avocado-oil (last visited on March 12, 2024).

[6] *Id.*

1  given fatty acid or sterol, the "fingerprint" contains reference *ranges* for all fatty acids and sterols,

2  and it provides a standard within which *all authentic samples of a specific oil* will fit.

3      28.     This unique "fingerprint" is codified by the Food and Agriculture Organization of

4  the United Nations ("FAO") in the Codex Alimentarius[7] ("Codex"), which is a collection of

5  internationally recognized standards, codes, and guidelines related to food production, labeling, and

6  safety. In addition to providing standards and guidelines for industry, Codex codifies the

7  "fingerprints" (*i.e.*, fatty acid and sterol profiles) which are used as the standards of identity for

8  various oils.

9      29.     From the FAO webpage: "The Codex Alimentarius is a collection of internationally

10  adopted food standards and related texts presented in a uniform manner. These food standards and

11  related texts aim at protecting consumers' health and ensuring fair practices in the food trade. The

12  publication of the Codex Alimentarius is intended to guide and promote the elaboration and

13  establishment of definitions and requirements for foods to assist in their harmonization and in doing

14  so to facilitate international trade."[8]

15      30.     Standards for foods are proposed, evaluated, and adopted at meetings of the Codex

16  Alimentarius Commission ("CAC"). The CAC is made up of 189 members representing 188

17  countries and the European Union. The working group tasked with understanding the chemical

18  properties of avocado oil, which would be operationalized as a means for identifying authentic

19  samples of avocado oil, was chaired by Mexico and co-chaired by the United States of America.[9]

20  The working group members included United States government officials, global health

21  organization officials, and representatives from food industry and trade groups. The working group

22  solicited and received input from subject matter experts from around the world on the chemical

23  characteristics of avocado oil.

24  _____

25  [7] Literally, "Food Code" in Latin.

26  [8] Codex Alimentarius, *About Codex Alimentarius*, FAO/WHO, https://www.fao.org/fao-who-codexalimentarius/about-codex/en/ (last visited on March 12, 2025).

27  [9] https://www.fao.org/fao-who-codexalimentarius/sh-proxy/en/?lnk=1&url=https%253A%252F%
28  252Fworkspace.fao.org%252Fsites%252Fcodex%252FMeetings%252FCX-709-28%252F
    Working%2BDocuments%252Ffo28_04e.pdf (last visited on March 12, 2025).

31.     The working committee's purpose was to "define a 100% authentic and[/]or pure avocado oil, while promoting an inclusive proposal that considers the characteristics of avocado oil produced in the various regions of the world." The working group aimed to address "the problem of adulteration that is intended to be avoided as much as possible."[10]

32.     The standards developed by the CAC are used to ensure that consumers receive "a safe, wholesome food product free from adulteration, correctly labelled and presented."[11]

33.     The 47th Session of the Codex Alimentarius Commission ("CAC47") was held in Geneva, Switzerland from November 25 through November 30, 2024. During CAC47, the CAC evaluated the Codex "fingerprint" for avocado oil and voted to adopt it as a means for identifying authentic samples of avocado oil (i.e., only avocado oil). This standard was unanimously adopted at the close of CAC47, on November 30, 2024.

34.     CAC47 specifically undertook the task of establishing and adopting a means  for identifying authentic avocado oil because "recent growth in demand for healthier food products globally has seen a high value market develop for avocado oil. International agreement on the criteria included in the standard will help protect consumer health, facilitate trade, and provide a basis for determining the authenticity of the product."[12]

35.     Plaintiff's counsel commissioned independent laboratory testing of samples of the Class Products. The third-party laboratory analyzed the fatty acid profiles of the Class Products and compared them with the fatty acid "fingerprints" of avocado oil as explained above. The testing revealed that the fatty acid profile of the Class Products does not match the "fingerprint" corresponding to avocado oil.

36.     To further confirm that the Class Products are adulterated, the laboratory also analyzed the sterol profiles of the Class Products and compared them with the sterol "fingerprints"

---

[10] *Id.*

[11] *Id.*

[12] FAO, *FAO-WHO Codex Alimentarius Commission adopts new standards*, FAO Newsroom, https://www.fao.org/newsroom/detail/fao-who-codex-alimentarius-commission-adopts-new-standards-47session/en (last visited on Feb. 26, 2025).

of avocado oil. The testing revealed that the sterol profile of the Class Products also does not match the "fingerprint" corresponding to avocado oil.

**E.    Recent Reporting Further Confirms the Class Products are Adulterated**

37.    A group of scientists at UC Davis conducted a study testing the content of a variety of avocado oils sold in retail stores. The study tested the fatty acid and sterol levels in the various products.

38.    On August 27, 2024, *The Washington Post* reported that "adulteration is rampant in the avocado oil industry, and many people are being misled by some of the nation's largest retail chains."[13]

39.    The article discussed, in detail, the findings of the UC Davis study. The UC Davis study was published *Food Control*, an official peer reviewed scientific journal of the European Federation of Food Science and Technology and the Internation Union of Food Science and Technology.[14]

40.    The UC Davis researchers found that nearly two-thirds of the 36 bottles they tested were adulterated.[15]

41.    The UC Davis testing reported in *The Washington Post* article revealed that many oils labeled and sold as avocado oil actually contained low value oils such as sunflower, safflower, canola, and soybean oils, among "other oils that could not be identified[,]" since "[t]hese oils look similar to refined avocado oil but are cheaper to make."[16]

42.    The authors of the article requested comment from the U.S. Food and Drug Administration ("FDA") in response to their findings. The FDA responded that "high value oils" such as avocado oil "are potential targets for economically motivated adulteration." "Economically

---

[13] Anahad O'Connor and Aaron Steckleberg, *Why your avocado oil may be fake and contain other cheap oils*, The Washington Post, https://www.washingtonpost.com/wellness/2024/08/27/avocado-oil-adulteration-tests/ (last visited March 12, 2025).

[14] Hilary S. Green and Selina C. Wang, *Purity and quality of private labelled avocado oil*, 152 Food Control 109837 (Oct. 2023).

[15] *Id.*

[16] *Id.*

motivated adulteration" (also known as "food fraud") occurs when someone "adds a substance to a food to make it appear better or of greater value," like "when manufacturers add a cheaper [oil] to an expensive [oil]" but sell the product as only the expensive oil.[17]

43.     While the UC Davis study (as originally published) did not reveal the brands and companies associated with the problematic oils, the researchers ***did*** provide this information to *The Washington Post* for inclusion in the August 27, 2024 article discussing the study. Among other adulterated products from various brands, the study found that the Class Products do not match the fatty acid or sterol profiles for avocado oil. Instead, the Class Products are adulterated with "[h]igh oleic sunflower or safflower oil."[18]

44.     Thus, based on the independent laboratory testing commissioned by Plaintiff, and separate testing performed by scientists at UC Davis, the Class Products do not conform to the Codex standard for avocado oil. The Codex standard has since been endorsed and adopted by the Food and Agriculture Organization of the United Nations to conclusively establish that a product is adulterated. Accordingly, the Class Products are not only avocado oil, and they are adulterated with other oils, contrary to the *Avocado Oil Claim*.

## **CLASS ACTION ALLEGATIONS**

45.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23, and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

### **California Class**

All natural persons who purchased at least one of the Class Products in the State of California within the applicable statute of limitations period.

### **California Consumer Subclass**

All natural persons who purchased at least one of the Class Products in the State of California, for personal, family, or household purposes, within the applicable statute of limitations period.

---

[17] https://www.fda.gov/food/compliance-enforcement-food/economically-motivated-adulteration-food-fraud (last visited March 12, 2025).
[18] O'Connor and Steckleberg, *Why your avocado oil may be fake*, *supra*.

46.     Excluded from the Classes are the following individuals and/or entities: Walmart and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Walmart has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

47.     Pursuant to Fed. R. Civ. P. 23(c)1(C), each of the above class definitions is a placeholder that may be altered or amended any time before final judgment.  As a result of additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate before the Court determines whether class certification is appropriate.

48.     Plaintiff is a member of both classes.

49.     Numerosity: The proposed Classes are so numerous that joinder of all members would be impractical. The Class Products are sold throughout the United States and the State of California. The number of individuals who purchased Class Products during the relevant time period is at least in the hundreds. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members and their identities are unknown to Plaintiff at this time, these Class members are identifiable and ascertainable.

50.     Common Questions Predominate: There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

a.  Whether Walmart misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Class Products;

b.  Whether Walmart's use of the challenged packaging, i.e., the *Avocado Oil Claim*, constituted false or deceptive advertising;

c.  Whether Walmart engaged in unfair, unlawful and/or fraudulent business practices;

d.  Whether Walmart's unlawful conduct, as alleged herein, was intentional and knowing;

e.  Whether Plaintiff and the Classes are entitled to damages and/or restitution, and if so, in what amount;

f.  Whether Plaintiff and the Classes are entitled to injunctive relief;

g.  Whether Plaintiff and the Classes are entitled to punitive damages, and if so, in what amount; and

h.  Whether Plaintiff and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

51.  Walmart has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiff on behalf of the proposed Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Walmart's deceptive packaging and advertising of the Class Products. Each instance of harm suffered by Plaintiff and Class members has directly resulted from a single course of unlawful conduct. Each Class member has been exposed to the same deceptive practice, as the packaging of the Class Products: (a) bear the same material *Avocado Oil Claim*, and (b) the Class Products does not meet this representation of fact. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

52.  <u>Superiority</u>: Because of the relatively small damages at issue for each individual Class member, no Class member could afford to seek legal redress on an individual basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

53.  <u>Typicality</u>: The representative Plaintiff's claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Walmart's uniform unlawful conduct as alleged herein.

54.    <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the proposed Classes as his interests do not conflict with the interests of the members of the proposed Classes he seeks to represent, and he has retained counsel competent and experienced in similar class action litigation. The interests of the members of the Classes will be fairly and adequately protected by the Plaintiff and his counsel.

55.    Walmart has also acted, or failed to act, on grounds generally applicable to Plaintiff and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

**FIRST CLAIM FOR RELIEF**
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code § 1750, _et seq._**
**(_For the California Consumer Subclass_)**

56.    Plaintiff repeats the allegations contained in paragraphs 1-55 above as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

57.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Consumer Subclass against Walmart pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, _et seq._

58.    The Class Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the Class Products by Plaintiff and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

59.    Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . ." By marketing the Class Products with their current packaging, Walmart has represented and continues to represent that the Class Products have characteristics (i.e., they are only avocado oil) that they do not have. Therefore, Walmart has violated section 1770(a)(5) of the CLRA.

60.    Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing the Class Products with their current packaging, Walmart has represented and continues to represent that the Class Products are of a particular standard, quality, or grade (i.e., they

are only avocado oil) which they do not possess. Therefore, Walmart has violated section 1770(a)(7) of the CLRA.

61.    Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By marketing the Class Products as only avocado oil, but not intending to sell the Class Products as such (i.e., selling them with the knowledge that they are adulterated), Walmart has violated section 1770(a)(9) of the CLRA.

62.    At all relevant times, Walmart has known or reasonably should have known that its *Avocado Oil Claim* on the Class Products' packaging is false and deceptive, and that Plaintiff and other members of the California Consumer Subclass would reasonably and justifiably rely on it when purchasing the Class Products. Nonetheless, Walmart persisted in making the *Avocado Oil Claim* on the Class Products' labels to deceive consumers into believing they are buying and consuming only avocado oil.

63.    Plaintiff and members of the California Consumer Subclass have justifiably relied on Walmart's misleading *Avocado Oil Claim* when purchasing the Class Products. Moreover, based on the materiality of Walmart's misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff and members of the California Consumer Subclass.

64.    Plaintiff and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by Walmart because they would have paid less for the Class Products, or would not have purchased them at all, had they known that the *Avocado Oil Claim* was false.

65.    In accordance with Cal. Civ. Code § 1780(d), Plaintiff is filing a declaration of venue, attached as **Exhibit A** to this Complaint.

66.    On September 28, 2023, Plaintiff, by and through his counsel, sent a notice and demand letter by certified mail to Walmart of his intent to pursue claims under the CLRA, and an opportunity to cure, consistent with Cal. Civ. Code § 1782. Walmart received this notice and demand letter on October 2, 2023, but it has done nothing to rectify the unlawful conduct described herein.

67.    Because Walmart has failed to fully rectify or remedy the damages caused after waiting more than the statutorily required 30 days after Walmart received the foregoing notice and

demand letter, Plaintiff is timely filing this Complaint for damages as permitted under Cal. Civ. Code § 1782(d). Plaintiff also requests an award of actual and punitive damages, attorneys' fees and costs, and any other relief that the Court deems proper, pursuant to Cal. Civ. Code § 1780(a).

68.     Plaintiff and members of the proposed Classes have no adequate remedy at law and are therefore entitled to restitution, disgorgement, and/or the imposition of a constructive trust to recover the amount of Defendant's ill-gotten gains, and/or other sums as may be just and equitable.

## SECOND CLAIM FOR RELIEF
### Violation of California's False Advertising Law
### California Business & Professions Code § 17500, *et seq*
### (*For the Classes*)

69.     Plaintiff repeats the allegations contained in paragraphs 1-55 above as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

70.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Walmart pursuant to California's False Adverting Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

71.     The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

72.     Walmart has represented and continues to represent to the public, including Plaintiff and members of the proposed Classes, through its deceptive packaging, that the Class Products are only avocado oil. Because Walmart has disseminated misleading information regarding the Class Products, and Walmart knows, knew, or should have known, through the exercise of reasonable care, that the *Avocado Oil Claim* is false and misleading, Walmart has violated the FAL.

73.     As a result of Walmart's false advertising, Walmart has and continues to unlawfully obtain money from Plaintiff and members of both Classes. Plaintiff therefore requests that the Court cause Walmart to restore this fraudulently obtained money to him and members of the proposed

Classes, to disgorge the profits Walmart made on these transactions, and to enjoin Walmart from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed Classes may be irreparably harmed and/or denied an effective and complete remedy.

74.     Plaintiff and members of the proposed Classes have no adequate remedy at law and are therefore entitled to restitution, disgorgement, and/or the imposition of a constructive trust to recover the amount of Defendant's ill-gotten gains, and/or other sums as may be just and equitable.

**THIRD CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code § 17200, *et seq.***
**(*For the Classes*)**

75.     Plaintiff repeats the allegations contained in paragraphs 1-55 above as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

76.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Walmart.

77.     The UCL, Cal. Bus. & Prof Code § 17200, provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

78.     Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Walmart's false and misleading advertising of the Class Products was and continues to be "unlawful" because it violates, *inter alia*, the CLRA, FAL, and Cal. Health & Safety Code §§ 110620 ("It is unlawful for any person to manufacture, sell,…or offer for sale any food that is adulterated) and 110585 ("Any food is adulterated (b) if any substance has been substituted wholly or in part therefor…[or] (d) if…any substance has been added thereto or mixed or packed therewith so as to…reduce its quality or strength or make it appear better or of greater value than it is."). As a result of Walmart's unlawful business acts and practices, Walmart has unlawfully obtained money from Plaintiff, and members of the proposed Classes.

79.     Under the UCL, a business act or practice is "unfair" if Walmart's conduct offends an established public policy, or is immoral, unethical, oppressive, unscrupulous, or substantially

injurious to consumers, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims. Walmart's conduct was and continues to be of no benefit to purchasers of the Class Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the packaging. Deceiving consumers into believing the Class Products are only avocado oil, when they are not, is of no benefit to consumers. Therefore, Walmart's conduct was and continues to be "unfair." As a result of Walmart's unfair business acts and practices, Walmart has and continues to unfairly obtain money from Plaintiff, and members of the proposed Classes.

80. Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Walmart's conduct was and continues to be fraudulent because it has the effect of deceiving consumers into believing the Class Products are only avocado oil. Because Walmart misled Plaintiff and members of both Classes, Walmart's conduct was "fraudulent." As a result of Walmart's fraudulent business acts and practices, Walmart has and continues to fraudulently obtain money from Plaintiff and members of the proposed Classes.

81. Plaintiff requests that the Court cause Walmart to restore this unlawfully, unfairly, and fraudulently obtained money to them, and members of the proposed Classes, to disgorge the profits Walmart made on these transactions, and to enjoin Walmart from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed Classes may be irreparably harmed and/or denied an effective and complete remedy.

82. Plaintiff and members of the proposed Classes have no adequate remedy at law and are therefore entitled to restitution, disgorgement, and/or the imposition of a constructive trust to recover the amount of Defendant's ill-gotten gains, and/or other sums as may be just and equitable.

**FOURTH CLAIM FOR RELIEF**
**Breach of Express Warranty**
**California Commercial Code § 2313**
**(*For the Classes*)**

83. Plaintiff repeats the allegations contained in paragraphs 1-55 above as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

84. Plaintiff brings this claim individually and on behalf of the members of the proposed

Classes against Walmart.

85.    California's express warranty statute provides that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

86.    Walmart has expressly warranted on the Class Products' packaging that they are only avocado oil through the *Avocado Oil Claim*.

87.    This representation about the Class Products is: (a) an affirmation of fact or promise made by Walmart to consumers that Class Products are only avocado oil; (b) became part of the basis of the bargain to purchase the Class Products when Plaintiff and other consumers relied on the representation; and (c) created an express warranty that the Class Products would conform to the affirmation of fact or promise. In the alternative, the representation about the Class Products is a description of goods which were made as part of the basis of the bargain to purchase the Class Products, and which created an express warranty that the Class Products would conform to the Class Products' description.

88.    Plaintiff and members of the Classes reasonably and justifiably relied on the foregoing express warranties, believing that the Class Products did in fact conform to those warranties.

89.    Walmart has breached the express warranties made to Plaintiff and members of the proposed Classes by failing to produce the Class Products in accordance with the *Avocado Oil Claim*, as expressly warranted on the packaging.

90.    Plaintiff and members of the proposed Classes paid a premium price for the Class Products but did not obtain the full value of the Class Products as represented. If Plaintiff and members of the proposed Classes had known of the true nature of the Class Products, they would not have been willing to pay the premium price charged in the market, or they would not have purchased them at all. As a result, Plaintiff and members of the Classes suffered injury and deserve to recover all damages afforded under the law.

91.    Within a month after Plaintiff discovered that Walmart did in fact breach the express warranty, Plaintiff notified Walmart of the breach. *See supra* ¶ 66.

**FIFTH CLAIM FOR RELIEF**
**Breach of Implied Warranty**
**California Commercial Code § 2314 (2)(f)**
(*For the Classes*)

92.    Plaintiff repeats the allegations contained in paragraphs 1-55 above as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

93.    Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Walmart.

94.    California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

95.    California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as . . . (f) [c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

96.    Walmart is a merchant with respect to the sale of the Class Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Class Products to California consumers.

97.    By advertising the Class Products with their current packaging, Walmart made an implied promise that the Class Products are only avocado oil. The Class Products do not, however, "conform to the promises . . . made on the container or label" because they are not only avocado oil, but are instead adulterated. Plaintiff, as well as consumers, did not receive the goods as impliedly warranted by Walmart to be merchantable.

98.    Therefore, the Class Products are not merchantable under California law and Walmart has breached its implied warranty of merchantability with respect to the Class Products.

99.    If Plaintiff and members of the Classes had known that the Class Products were not only avocado oil, they would not have been willing to pay the premium price associated with them, or they would not have purchased them at all. Therefore, as a direct and/or indirect result of

-19-

Walmart's breach, Plaintiff and members of the Classes have suffered injury and deserve to recover all damages afforded under the law.

100.    Within a month after Plaintiff discovered that Walmart did in fact breach the implied warranty, Plaintiff notified Walmart of the breach. *See supra* ¶ 66.

## SIXTH CLAIM FOR RELIEF
### Intentional Misrepresentation
### (*for the Classes*)

101.    Plaintiff repeats the allegations contained in paragraphs 1-55 above as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

102.    Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Walmart.

103.    Walmart marketed the Class Products in a manner indicating that they are only avocado oil when they are not. Therefore, Walmart has made misrepresentations about the Class Products.

104.    The *Avocado Oil Claim* is material to a reasonable consumer because it relates to the quality, safety, utility, and healthfulness of the Class Products. A reasonable consumer attaches importance to such representations and is induced to act thereon in making purchasing decisions with respect to oil that is consumed—i.e., oil that is used for cooking or consumed raw.

105.    At all relevant times, Walmart knew that the *Avocado Oil Claim* was misleading. Walmart intends for Plaintiff and other consumers to rely on the *Avocado Oil Claim*, as evidenced by Walmart intentionally and conspicuously placing it on the packaging of the Class Products. In the alternative, Walmart acted recklessly in making the *Avocado Oil Claim* without regard to the truth.

106.    Plaintiff and members of the proposed Classes have reasonably and justifiably relied on Walmart's intentional misrepresentations (i.e., the *Avocado Oil Claim*) when purchasing the Class Products, and had the correct facts been known, would not have purchased them at the prices at which they were sold in the market, or would not have purchased them at all.

107.    Therefore, as a direct and proximate result of Walmart's intentional misrepresentations, Plaintiff and members of the Classes have suffered economic losses and other

general and specific damages, including but not limited to the amounts paid for the Class Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed Classes, respectfully prays for the following relief:

A.    Certification of this case as a class action on behalf of the Classes defined above, appointment of Plaintiff as Class representative, and appointment of his counsel as Class counsel;

B.    A declaration that Walmart's actions, as described herein, violate the claims described herein;

C.    An award to Plaintiff and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Walmart obtained from Plaintiff and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

D.    An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class members, including, *inter alia*, an order prohibiting Walmart from engaging in the unlawful acts described above;

E.    An award of all economic, monetary, actual, consequential, and compensatory damages caused by Walmart's conduct;

F.    An award of punitive damages;

G.    An award of nominal damages;

H.    An award to Plaintiff and his counsel of reasonable expenses and attorneys' fees;

I.    An award to Plaintiff and the proposed Classes of pre and post-judgment interest, to the extent allowable; and

J.    For such further relief that the Court may deem just and proper.

///
///
///
///

1

## **DEMAND FOR JURY TRIAL**

2          Plaintiff, on behalf of himself and the proposed Classes, hereby demands a jury trial with

3  respect to all issues triable of right by jury.

4

5  DATED: March 14, 2025                    **THE WAND LAW FIRM, P.C.**

6

7                                          By: /s/ Aubry Wand
                                               Aubry Wand

8                                          **FARUQI & FARUQI, LLP**
                                           Lisa T. Omoto
9

10                                         *Attorneys for Plaintiff and the Putative*
                                           *Classes*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28