**FARUQI & FARUQI, LLP**
Lisa T. Omoto (SBN 303830)
1901 Avenue of the Stars, Suite 1060
Los Angeles, CA 90067
Telephone: (424) 256-2884
Email: lomoto@faruqilaw.com

**THE WAND LAW FIRM, P.C.**
Aubry Wand (SBN 281207)
100 Oceangate, Suite 1200
Long Beach, CA 90802
Telephone: (310) 590-4503
Email: awand@wandlawfirm.com

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW HAWKINS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WALMART INC., a corporation; and DOES 1 through 10, inclusive,<br><br>Defendant. | CASE NO.: 1:24-cv-00374-KES-SKO<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:  June 2, 2025<br>Time:  1:30 p.m.<br>Place:  Courtroom 6<br>　　　　2500 Tulare Street<br>　　　　Fresno, CA 93721 |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     LEGAL STANDARD ......................................................................................... 1

        A.      Rule 12(b)(6) ......................................................................................... 1

        B.      Reasonable Consumer Standard ........................................................... 2

III.    ARGUMENT ..................................................................................................... 3

        A.      Plaintiff's Claims Satisfy the Reasonable Consumer Test ................... 3

        B.      The FAC Clarifies that Plaintiff's Theory is Based on Adulteration,
                Not Contamination, by Removing the Word "Pure" ............................. 3

        C.      The FAC Includes Detailed Testing Allegations ................................. 5

        D.      None of Defendant's Arguments Are Persuasive ................................ 8

                1.      The FAC's Testing Allegations Are Sufficient ........................... 8

                2.      The FAC's Allegations Sufficiently Inform Defendant of the
                        Basis of Plaintiff's Claims and Theory of Liability .................. 12

                3.      The FAC Sufficiently Alleges Materiality ................................. 13

        E.      The FAC Sufficiently Alleges a Breach of Implied Warranty Claim ..... 14

        F.      The FAC Sufficiently Alleges an Intentional Misrepresentation Claim ......... 15

        G.      The Court Should Not Strike Plaintiff's Request for Punitive Damages ............... 16

IV.     CONCLUSION ................................................................................................. 18

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**                                                                                                                          **Page(s)**

3

*Aloudi v. Intramedic Research Group, LLC*,
    729 Fed. Appx. 514 (9th Cir. 2017) ........................................................................11

4

5

*Anderson News, L.L.C. v. Am. Media, Inc.*,
    680 F.3d 162 (2nd Cir. 2012) ...................................................................................9

6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................15

7

8

*In re Avocado Oil Marketing & Sales Practices Litigation*,
    MDL 3133, 2025 WL 428016 (U.S. Jud. Pan. Mult. Lit. Feb. 6, 2025) ...................3

9

*Balistreri v. Pacifica Police Dept.*,
    901 F.2d 696 (9th Cir. 1988) ....................................................................................2

10

11

*Banks v. R.C. Bigelow, Inc.*,
    536 F. Supp. 3d 640 (C.D. Cal. 2021) ...................................................................15

12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................................2, 9

13

14

*Broomfield v. Craft Brew Alliance, Inc.*,
    No. 17-cv-01027-BLF, 2017 WL 3838453 (N.D. Cal. Sep. 1, 2017) ......................5

15

16

*Comerica Bank v. McDonald*,
    No. C-06-03735 RMW, 2006 WL 3365599 (N.D. Cal. Nov. 17, 2006) .................15

17

*Concha v. London*,
    62 F. 3d 1493 (9th Cir. 1995) .................................................................................15

18

19

*Doe v. SuccessfulMatch.com*,
    70 F. Supp. 3d 1066 (N.D. Cal. 2014) ...................................................................13

20

*Elias v. Navasartian*,
    No. 1:15-cv-01567, 2017 WL 1013122 (E.D. Cal. Feb. 17, 2017) ...................16, 17

21

22

*Engalla v. Permanente Medical Grp., Inc.*,
    938 P.2d 903 (Cal. 1997) ...................................................................................13, 14

23

24

*Evancho v. Fisher*,
    423 F.3d 347 (3d Cir. 2005) .....................................................................................8

25

*Evans v. DSW, Inc.*,
    No. CV 16-3791-JGB, 2017 WL 7058233 (C.D. Cal. Feb. 2, 2017) .......................8

26

27

28

-ii-

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

*Figy v. Frito-Lay North America, Inc.*,
  67 F. Supp. 3d 1075 (S.D. Fla. 2015)..................................................12, 13

*Garcia-Barajas v. Nestle Purina Petcare Co.*,
  No. 09-cv-00025-OWW-DLB, 2009 WL 2151850 (E.D. Cal. Jul. 16, 2009) ..........................17

*Garland v. The Kroger Co.*,
  No. 24cv240-LL-JLB, 2025 WL 474914 (S.D. Cal. Feb. 12, 2025) ........................................11

*Golikov v. Walmart*,
  No. 2:24-cv-08211-RGK-MAR, 2025 WL 648532 (C.D. Cal. Feb. 27, 2025) ................ *passim*

*Hadley v. Kellogg Sales Co.*,
  324 F. Supp. 3d 1084 (N.D. Cal. 2018) ..................................................12

*James v. Chocmod USA Inc.*,
  No. 1:22-cv-01435 JLT SKO, 2025 WL 950509 (E.D. Cal. Mar. 28, 2025)..........................15

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*,
  299 F.3d 1242 (11th Cir. 2002)..................................................14

*Joseph v. J.M. Smucker Co.*,
  No. CV 17-8735 FMO, 2019 WL 1219708 (C.D. Cal. Mar. 13, 2019)..................................10

*Kanan v. Thinx Inc.*,
  No. CV 20-10341 JVS, 2021 WL 4464200 (C.D. Cal. June 23, 2021) ..................................10

*Kroller v. Med Foods, Inc.*,
  No. 14-cv-02400-RS, 2015 WL 13653887 (N.D. Cal. Jan. 6, 2015)........................................10

*Krommenhock v. Post Foods, LLC*,
  334 F.R.D. 552 (N.D. Cal. 2020) ..................................................17

*Lazy Y. Ranch Ltd. v. Behrens*,
  546 F. 3d 580 (9th Cir. 2008)..................................................2

*Martin v. Onnit Labs Inc.*,
  No. 2:23-cv-03737-FWS-KES, 2023 WL 8190712 (C.D. Cal. Oct. 18, 2023) ........................11

*McConnon v. Kroger Co.*,
  No. 2:24-CV-02601-SB-E, 2024 WL 3941340 (C.D. Cal. June 21, 2024) ..................3, 4, 5, 12

*Meyer v. Colavita USA Inc.*,
  No. 10–61793–CIV–LENARD/O'SULLIVAN,
  2011 WL 13216980 (S.D. Fla. Sept. 13, 2011)..................................................11, 12

*Naimi v. Starbucks Corp.*,
  798 Fed. Appx. 67 (9th Cir. 2019) ..................................................9

*Neveu v. City of Fresno,*
　　392 F. Supp. 2d 1159 (E.D. Cal. 2005) .......................................................................17

*Oppenheimer v. Sw. Airlines Co.,*
　　No. 13-CV-260-IEG (BGS), 2013 WL 3149483 (S.D. Cal. June 17, 2013) ....................16, 17

*Organic Consumers Ass'n v. Sanderson Farms, Inc.,*
　　284 F. Supp. 3d 1005 (N.D. Cal. 2018) ..........................................................................2

*POM Wonderful LLC v. Purely Juice, Inc.,*
　　No. CV-07-02633 CAS, 2008 WL 4222045 (C.D. Cal. July 17, 2008) ...........................14

*Quality Wash Group V, Ltd. v. Hallak,*
　　50 Cal. App. 4th 1687 (1996) ........................................................................................16

*Robinson v. J.M. Smucker Co.,*
　　No. 18-cv-04654-HSG, 2019 WL 2029069 (N.D. Cal. May 8, 2019) ...........................10

*Saidian v. Krispy Kreme Doughnut Corp.,*
　　No. 2:16-cv-08338-SVW, 2017 WL 945083 (C.D. Cal. Feb. 27, 2017) .......................15

*Samet v. Proctor & Gamble Co.,*
　　No. 12-cv-01891-RS, 2019 WL 13167115 (N.D. Cal. Jan. 15, 2019) ...........................14

*Schuchardt v. President of the United States,*
　　839 F.3d 336 (3d Cir. 2016) ...........................................................................................8

*Shalikar v. Asahi Beer U.S.A., Inc.,*
　　No. LA CV17-02713 JAK (JPRx), 2017 WL 9362139 (C.D. Cal. Oct. 16, 2017) ........10

*Shimy v. Wright Med. Tech., Inc.,*
　　No. 2:14-cv-04541-CAS(RZx), 2014 WL 3694140 (C.D. Cal. July 23, 2014) ..............16, 17

*Starr v. Baca,*
　　652 F.3d 1202 (9th Cir. 2011) .........................................................................................9

*Swingless Golf Club Corp. v. Taylor,*
　　679 F. Supp. 2d 1060 (N.D. Cal. 2009) ..........................................................................15

*Thomas v. Costco Wholesale Corp.,*
　　No. 5:12-CV-02908-EJD, 2014 WL 1323192 (N.D. Cal. Mar. 31, 2014) .....................2

*Tran v. Sioux Honey Association, Cooperative,*
　　471 F. Supp. 3d 1019 (C.D. Cal. 2020) ...........................................................................4

*Traynor v. Lexington Insurance Co.,*
　　No. 2:09–cv–02990–FMC–SSx, 2009 WL 10675395 (C.D. Cal. Jun. 8, 2009) ............17

*Tye v. Wal-Mart Stores, Inc.,*
　　No. SA CV 15-1615, 2016 WL 6138424 (C.D. Cal. Apr. 26, 2016) ...........................10, 11

*Watson v. Crumbl LLC*,
    736 F. Supp. 3d 827 (E.D. Cal. 2024) ............................................................2, 3

*Webb v. Dr. Pepper Snapple Group, Inc.*,
    No. 4:17–00624–CV–RK, 2018 WL 1955422 (W.D. Mo. Apr. 25, 2018) ..............................10

*Whiteside v. Kimberly Clark Corp.*,
    108 F.4th 771 (9th Cir. 2024) .............................................................2, 3

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ...................................................................2

**Statutes**

21 U.S.C. § 342(b)(4) ..................................................................................13

Cal. Com. Code § 2314(1) ...........................................................................15

Cal. Com. Code § 2314(2)(f) ........................................................................15

**Other Authorities**

Charles D. Aaron, *Adulterated and Misbranded Food*,
    74 Buffalo Med. J. 1 (1918) ..............................................................13

Fed. R. Civ. P. 9(b) .....................................................................................15

Fed. R. Civ. P. 12(f) .....................................................................................17

Fed. R. Civ. P. 54(c) .....................................................................................16

## I.    __INTRODUCTION__

In this case, Plaintiff challenges exactly what the label of Defendant's Great Value brand Avocado Oil (the "Product(s)" or the "Class Product(s)") says: that the Product contains only one ingredient – avocado oil. And if a consumer checked the back label, this reasonable belief would be corroborated, as the nutrition panel confirms avocado oil is the only ingredient. In other words, there is no dispute at the pleadings stage that Defendant Walmart Inc. ("Defendant" or "Walmart") affirmatively and unequivocally represents on the Product itself that it is only avocado oil, and that a reasonable consumer will plausibly form this belief.

Moreover, the First Amended Complaint ("FAC"), ECF No. 23, clarifies that Plaintiff's previous use of the word "pure" was intended to convey the belief that the Product was only avocado oil—i.e., not adulterated with other cheaper oils—or stated conversely, Plaintiff's prior use of the word "pure" was not intended to convey the notion there were no trace amounts of other ingredients that made their way into the Product through the normal manufacturing process. With this clarification, the Court should no longer be concerned about a common understanding of the term "pure," which is not on the label itself.

The Court's other concern pertained to the sufficiency of the allegations regarding the Product's adulteration with other oils. This too has been addressed, as the FAC thoroughly explains that every oil has a distinct fingerprint (i.e., specific ranges of various fatty acids and sterols unique to each oil), and the fact that the Products' fatty acid and sterol profiles fall well outside the range established by an international, blue-ribbon panel of experts and stakeholders on avocado oil—based on independent research and Plaintiff's testing—means that it is adulterated with other oils, not just incidentally contaminated with trace amounts of unrelated ingredients. These allegations are sufficient to put Defendant on notice of Plaintiff's claims and theory of liability.

For these reasons, and others set forth below, the Court should deny Defendant's Motion to Dismiss the FAC ("Mot.") (ECF No. 26).

## II.    __LEGAL STANDARD__

### A.    __Rule 12(b)(6)__

A complaint should not be dismissed under Federal Rule of Civil Procedure 12(b)(6) unless there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable

legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988); *see also Organic Consumers Ass'n v. Sanderson Farms, Inc.*, 284 F. Supp. 3d 1005, 1010 (N.D. Cal. 2018). In considering a motion to dismiss for failure to state a claim, the court should accept as true all allegations in the complaint and construe the pleadings in the light most favorable to the plaintiff. *Lazy Y. Ranch Ltd. v. Behrens*, 546 F. 3d 580, 588 (9th Cir. 2008). To survive a motion to dismiss, a plaintiff must only allege enough facts to "raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Id*. at 546.

**B.    Reasonable Consumer Standard**

"Courts rarely grant a motion to dismiss for failure to satisfy [the reasonable consumer] test in the initial pleadings because what a reasonable person would believe is generally a question of fact, and at this stage, the court's focus is on the plausibility of the legal theories." *Watson v. Crumbl LLC*, 736 F. Supp. 3d 827, 841 (E.D. Cal. 2024) (internal citations, quotation marks omitted). "The touchstone under this test is whether the product labeling and ads promoting the product have a meaningful capacity to deceive." *Id.* (citing *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023)). Thus, "[d]ismissal is appropriate only when 'the advertisement itself [makes] it impossible for the plaintiff to prove that a reasonable consumer [is] likely to be deceived.'" *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 778 (9th Cir. 2024) (cleaned up). *See also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) (cautioning that dismissal of false advertising claims is proper only in a "rare situation," where "it [is] impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived."). "Where there are food packaging features that could likely deceive a reasonable consumer, the Ninth Circuit has found that granting a motion to dismiss is inappropriate." *Thomas v. Costco Wholesale Corp.*, No. 5:12-CV-02908-EJD, 2014 WL 1323192, at *7 (N.D. Cal. Mar. 31, 2014) (citing *Williams*, 552 F.3d at 939).

**III.    ARGUMENT**

**A.    Plaintiff's Claims Satisfy the Reasonable Consumer Test**

Plaintiff's CLRA, UCL, FAL, breach of express warranty, and intentional misrepresentation claims are governed by the reasonable consumer standard. *See* Order Granting Motion to Dismiss ("MTD Or.") at 5, 7-8 (ECF No. 22). "The touchstone under this test is whether the product labeling and ads promoting the product have a meaningful capacity to deceive." *Watson*, 736 F. Supp. 3d at 841 (internal citation omitted). Here, as explained below, it is reasonable for a consumer to believe based on the unqualified "Avocado Oil" representation that the Product consists of only avocado oil. Indeed, this is the logical interpretation of the Product label, and it is clearly sufficient to state a claim under the reasonable consumer standard. *Whiteside*, 108 F.4th at 783 (holding "plant-based" sufficient to state UCL, FAL, CLRA, breach of warranty, and unjust enrichment claims). The only remaining component of the reasonable consumer analysis is the sufficiency of the allegations regarding falsity—i.e., the adulteration of the Products—which as explained below, the FAC details based on analysis of the fatty acid and sterol composition of the Products.

**B.    The FAC Clarifies that Plaintiff's Theory is Based on Adulteration, Not Contamination, by Removing the Word "Pure"**

The Court granted Defendant's first motion to dismiss largely because it concluded Plaintiff's use of the word "pure" to describe how reasonable consumers interpret the "Avocado Oil" representation was vague. MTD Or. at 6-7. Plaintiff's prior use of the word "pure" was always intended to convey the proposition that reasonable consumers interpret the "Avocado Oil" representation to mean that the Products contain only avocado oil and are not adulterated with other oils. The FAC now makes this irrefutably clear by removing the word "pure" and clarifying that reasonable consumers believe, based on the "Avocado Oil" representation, that the Products "are only avocado oil and do not contain any other oils." FAC at 1. Thus, the *McConnon* court's analysis of the definition of the word "pure" is inapposite. *See* MTD at 7 (citing *McConnon v. Kroger Co*., No. 2:24-CV-02601-SB-E, 2024 WL 3941340, at *3 (C.D. Cal. June 21, 2024)).

The Court also cited *In re Avocado Oil Marketing & Sales Practices Litigation*, MDL 3133, 2025 WL 428016, at *1 (U.S. Jud. Pan. Mult. Lit. Feb. 6, 2025) ("JPML"), where the JPML denied

centralization because "the results of a study of oils produced widely varying results regarding the oils' chemical profiles." MTD Or. at 7. That MDL petition involved different products sold by companies other than Defendant, so the fact that there were differing chemical profiles of different products sold by different retailers (including some authentic samples) has no bearing here, and this is especially true on a motion to dismiss. The Court also cited *Tran v. Sioux Honey Association, Cooperative*, 471 F. Supp. 3d 1019, 1028 (C.D. Cal. 2020) for the proposition that "pure" has no fixed meaning, but that case is inapposite because the term "pure" was the at-issue representation on the front label. In *Tran*, the plaintiff alleged that reasonable consumers interpret the terms "Pure" and "100% Pure" to mean that honey cannot contain even trace amounts of glyphosate, even if the glyphosate is present as a result of the bees' foraging habits. *Id.* at 1027. Here, as explained *infra* § III(C), the at-issue representation is "Avocado Oil" and Plaintiff has specifically alleged that testing shows material adulteration with other oils, not trace amounts of other ingredients. In other words, this case is not about the purity of the avocado oil (to the extent "purity" means that the products do not contain trace amounts of contaminants), but instead whether the products are just one ingredient – avocado oil. Thus, the precise definition of the word "pure," which Plaintiff never proffered as the basis for his claims, is not at issue.[1]

Further, because the FAC clarifies that the "Avocado Oil" representation leads reasonable consumers to believe that the Products contain "only avocado oil," Defendant's motion to dismiss is virtually identical to one that was denied in *Golikov v. Walmart*, No. 2:24-cv-08211-RGK-MAR, 2025 WL 648532 (C.D. Cal. Feb. 27, 2025), another case involving Defendant's Great Value Avocado Oil products. In *Golikov*, the court concluded that Defendant's "Avocado Oil" representation is plausibly misleading:

> Plaintiff challenges exactly what the label says: that the Product contains only one ingredient—avocado oil. Second, there is no credible dispute or ambiguity as to the meaning of the allegation. Plaintiff claims that, despite the label listing only one ingredient, there are other cheaper oils mixed in with the avocado oil. Both Defendant and the Court can easily evaluate the merits of such a claim.

*Id.* at *3. And while Defendant repeatedly attempts to mischaracterize the facts of this case as "near-identical" to those in *McConnon* (MTD at 4), which, as opposed to *Golikov*, involved a different product,

---

[1] Plaintiff's prior reference to "Pure Avocado Oil" on Defendant's website was additive and primarily went to Defendant's knowledge and intent.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

Judge Klausner held that *McConnon* was "readily distinguishable" because the term "pure" was nowhere to be found on the bottle and "appeared to be susceptible to multiple, widely varying definitions." *Golikov*, 2025 WL 648532, at *3. Again, because the FAC removes the word "pure" clarifies that the label falsely represents that the Product contains "only avocado oil," *McConnon* is inapposite.

Defendant mischaracterizes Plaintiff's removal of the word "pure" as an attempt to "evade" this Court's prior order. MTD at 6, n.2. Not so. Plaintiff's amendments are nothing more than clarifications, as Plaintiff's theory of liability has always been that the Product consists only of avocado oil, and removal of the word "pure" is entirely consistent with this. Compl. (ECF No. 1-1) ¶ 3 ("Unbeknownst to consumers, the Class Products are adulterated with other oils."). The Court and Defendant recognized this. MTD Or. at 6 ("Plaintiff alleges that the Avocado Oil representation is deceptive because it falsely claims that the product contains only avocado oil."); MTD at 6 (arguing the change from "pure" to "only" is a "a distinction without a difference."). Thus, the Court's analysis of the word "pure" in *McConnon* no longer applies. In any event, Defendant's argument is irrelevant because "the Ninth Circuit recognizes the 'well-established doctrine that an amended pleading supersedes the original pleading.'" *Broomfield v. Craft Brew Alliance, Inc*., No. 17-cv-01027-BLF, 2017 WL 3838453, at *4 (N.D. Cal. Sep. 1, 2017) (citations omitted). Under this doctrine, courts cannot compare allegations in an original complaint to an operative complaint in deciding a motion to dismiss. *See id.*

### C.      The FAC Includes Detailed Testing Allegations

The Court's other concern about the original complaint was that Plaintiff's testing allegations were vague. MTD Or. at 7. The FAC squarely responds to this concern, clarifying that the sterol and fatty acid profiles of the Products were tested and did not match the "fingerprints" of authentic samples of avocado oil (i.e., only avocado oil). FAC ¶ 35. Plaintiff further alleges that the testing shows "material adulteration with other oils, not trace or *de minimis* amounts of unrelated ingredients that could be expected to accidentally make their way into the Class Products," *see id.* ¶ 20, n.2 rendering Defendant's speculation about the possible presence of "trace" amounts of non-oils unmeritorious at the pleadings stage.

To further support the validity of the third-party testing commissioned by Plaintiff, the FAC adds allegations that the Products are adulterated with other oils based on an independent study conducted by UC Davis. *Id*. ¶ 21 ("the fatty acid and sterol profiles of the Class Products show that the Class Products are definitively not only avocado oil, and are indeed adulterated with other oils."); *see id.* ¶¶ 37-43. This, on its own, is sufficient at the pleading stage. In *Golikov*, the plaintiff did not test the particular product he purchased, but the court held that his reasonable reliance on an independent UC Davis study finding rampant adulteration in the avocado oil industry sufficed to state a claim at the pleadings stage:

> Defendant first argues that Plaintiff must plausibly allege that the exact bottle of the Product she purchased was adulterated, and that her reliance on the UC Davis study which tested other bottles is insufficient. There are two problems with this argument. First, Defendant does not cite any authority suggesting that Plaintiff must test the particular bottle she purchased. Second, courts routinely allow plaintiffs in consumer protection cases to draw reasonable inferences that the particular item they purchased was defective or mislabeled based on tests of other samples. *See*, *e.g.*, *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 69 (9th Cir. 2019) (finding laboratory testing of samples sufficient to plausibly allege that each item of a product line was misrepresented); *In re Herbal Supplements Mktg. & Sales Practices Litig.*, 2017 WL 2215025, at *12 (N.D. Ill. 2017) (collecting cases).

*Golikov*, 2025 WL 648532, at *3-4. Defendant's only rebuttal is that "*The Washington Post* article reported the study included three samples of 'Great Value' avocado oil, with differing geographic sources, and each with different results." MTD at 8. As relevant here, Defendant's merits-based argument underscores that these issues of fact cannot be resolved on the pleadings. Each of the tested samples returned results not consistent with avocado oil, or put differently, consistent with adulteration. Further, the likelihood that the UC Davis researchers randomly selected the only samples that suffered from adulteration, when the samples range across geography and time, defies logic.

In any event, the avocado oil "fingerprint" was specifically designed to include a broad *range* of fatty acid and sterol concentrations to account for different geographic sources of avocados (Mexico, Spain, etc.), so some differences in testing results are to be expected. The FAC explains how the "proportions of the various fatty acids and sterols," "expressed in the form of ranges," create a "fingerprint" for each oil. FAC ¶ 26. If an oil does not fall within the range of fatty acids and sterols, then it is adulterated with other oils. *Id.* ¶ 27. The "fingerprint" ranges of fatty acid and sterol profiles

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

are codified in the *Codex Alimentarius* ("Codex"), a United Nations Food and Agriculture Organization publication collecting internationally adopted food standards. *Id.* ¶¶ 27-28. The Codex standards are fashioned through extensive meetings of the Codex Alimentarius Commission, which is made up of 189 members representing 188 sovereign nations and the European Union. The United States co-chaired the working group that developed the Codex Avocado Oil standard. *Id.* ¶ 30. Defendant asserts that the Food & Drug Administration evaluates and considers whether to adopt Codex standards, but that it has not adopted any standard to define avocado oil in the United States, including the Codex standard. MTD at 7, n.3 (citing 21 C.F.R. § 130.6(a)). This hurts Defendant's cause. In the absence of any federal domestic standard, the Codex—a universally recognized standards organization of which the U.S. is a member—sets the *de facto* standard.[2] To the extent Defendant disputes this, Codex is relevant as it is the opinion of the world's leading experts on the composition of avocado oil, and challenges to this opinion are ripe for expert testimony (*i.e.*, the existence of an industry standard), not an issue for resolution as a matter of law before any discovery is taken.

Importantly, the Committee's purpose in setting the range for avocado oil was to "define a 100% authentic and[/]or pure avocado oil, while promoting an inclusive proposal that considers the characteristics of avocado oil produced in the various regions of the world." *Id.* ¶ 27. The working group aimed to address "the problem of adulteration that is intended to be avoided as much as possible." *Id.* ¶ 31. Plaintiff conducted independent testing of the Product that showed adulteration based on analysis of the fatty acid and sterol profiles. *Id.* ¶¶ 35-36. These allegations are summarized as follows:

> [B]ased on the independent laboratory testing commissioned by Plaintiff, and separate testing performed by scientists at UC Davis, the Class Products do not conform to the Codex standard for avocado oil. The Codex standard has since been endorsed and adopted by the Food and Agriculture Organization of the United

---

[2] Plaintiff does not interpret Defendant's argument to be that it has *carte blanche* authority to adulterate its avocado oil with other oils, simply because there is no federal regulation defining it, as this would be an absurd position, especially given that Federal law explicitly prohibiting adulteration of food. Accepting Defendant's argument would neuter the force of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 342, which was enacted to combat such adulteration practices, as brought to light by Upton Sinclair's seminal 1906 work, *The Jungle*.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

1
2

Nations to conclusively establish that a product is adulterated. Accordingly, the Class Products are not only avocado oil, and they are adulterated with other oils, contrary to the Avocado Oil Claim.

3

*Id.* ¶ 44. These allegations are sufficient to provide "Walmart with notice as to what makes the

4

Avocado Oil representation misleading." MTD Or. at 7; *see also Golikov*; 2025 WL 648532, at *2.

5

### D.    None of Defendant's Arguments Are Persuasive

6

Against this backdrop, Defendant's arguments – that the testing allegations are insufficient,

7

the FAC fails to provide sufficient notice, and that the challenged claim is not material – are

8

unpersuasive.

9

### 1.    The FAC's Testing Allegations Are Sufficient

10

Defendant continues to make a litany of merits-based attacks on the sufficiency of the

11

independent testing by UC Davis and Plaintiff's own testing, both of which show that the Product is

12

adulterated with other oils. MTD at 11-16. As an overarching matter, it is inappropriate to "delve

13

into the issues of fact going to the heart of the dispute on a motion to dismiss . . ." *Evans v. DSW,*

14

*Inc*., No. CV 16-3791-JGB (SPx), 2017 WL 7058233, at *7–8 (C.D. Cal. Feb. 2, 2017). At the

15

motion-to-dismiss stage, "courts cannot inject evidentiary issues into the plausibility determination,"

16

*Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016), because "the

17

[subsequent] discovery process is designed to enable [plaintiffs] . . . to un[ ]cover evidence that may

18

support the allegations set forth in a complaint," *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005).

19

Accordingly, Defendant's challenges relating to alternative causes of adulteration, statistical flaws

20

in the testing, the import of the Codex and the existence (or lack) of an industry standard for avocado

21

oil, involve issues that require fact and expert discovery before they can be resolved on the merits.

22

Further, Defendant made essentially the same argument in *Golikov*, which Judge Klausner

23

rejected. Specifically, Defendant speculates that the refining process could be the cause of the

24

adulteration.[3] Although the UC Davis researchers "acknowledged that there were possible alternative

25

26

27

28

---

[3] Relatedly, Defendant argues that the label cannot reasonably be read to convey it is only avocado oil because it states that it "MAY CONTAIN TRACES OF MILK, COCONUT, WHEAT, AND SOY." MTD at 17. This is irreconcilable with the allegations that the fatty acid and sterol profiles of the Products show adulteration with *other oils*, not trace amounts of non-oil ingredients like milk, coconut, and wheat. FAC ¶ 20, n.2.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

explanations for these results, they ultimately concluded that the Product was likely adulterated, and thus, its labeling was inaccurate." *Golikov*, 2025 WL 648532, at *1. In any event, whether Defendant can posit an alternative explanation is unpersuasive at the pleadings stage. *Id.* at *4 (rejecting same argument and holding the "mere existence of alternative explanations is immaterial unless the explanations are 'so likely to be true' as to render the plaintiff's theory implausible."). *See also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (when "there are two alternative explanations…plaintiff's complaint survives a motion to dismiss . . . [unless] defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible."); *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2nd Cir. 2012) ("The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion . . . [the court] may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible.").

Defendant additionally argues that Plaintiff alleges no nexus between the product he purchased and the products that were tested. MTD at 15. But the UC Davis testing showed widespread adulteration in the avocado oil industry from a single or several sources, and the third-party testing commissioned by Plaintiff showed that other samples were also adulterated. This is a fact that will be uncovered in discovery. In any event, there is no requirement that a plaintiff test the specific product he purchased, and this would lead to absurd results, as Plaintiff consumed the Product he purchased and therefore he could not test it. *Naimi v. Starbucks Corp.*, 798 Fed. Appx. 67 (9th Cir. 2019) (concluding that testing of representative samples of the covered product is adequate at the motion to dismiss stage). As the Supreme Court has articulated, "[a]sking for plausible grounds to infer [adulteration] does not impose a probability requirement at the pleadings stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [an injury]." *Twombly*, 550 U.S. at 556.

Ultimately, Defendant's argument boils down to the proposition that Plaintiff fails to include sufficient details relating to the testing. But as set forth above, the FAC contains extensive details regarding independent testing, Plaintiff's testing, and why the results of the testing shows adulteration. The FAC goes above and beyond what Rule 8 and 9(b) of the Federal Rules of Civil Procedure require, as recognized in the following cases:

- *Webb v. Dr. Pepper Snapple Group, Inc.*, No. 4:17–00624–CV–RK, 2018 WL 1955422, at *4 (W.D. Mo. Apr. 25, 2018) ("Specific details concerning the laboratory testing are unnecessary at the pleading stage.").

- *Joseph v. J.M. Smucker Co.*, No. CV 17-8735 FMO, 2019 WL 1219708, at *3 (C.D. Cal. Mar. 13, 2019), (rejecting defendants' "vigorous[] challenges" to the veracity of plaintiff's consumer survey because "[a]t the motion to dismiss stage, the Court will not weight the evidence pleaded in the complaint, but . . . will assume its truth.").

- *Shalikar v. Asahi Beer U.S.A., Inc.*, No. LA CV17-02713 JAK (JPRx), 2017 WL 9362139, at *8 (C.D. Cal. Oct. 16, 2017) (rejecting criticisms about the reliability of plaintiff's survey because "any weighing of evidence is inappropriate on a 12(b)(6) motion.").

- *Kroller v. Med Foods, Inc.*, No. 14-cv-02400-RS, 2015 WL 13653887, at *3 (N.D. Cal. Jan. 6, 2015) (rejecting argument a complaint must include evidence or prove the case and holding "Koller has alleged as a factual matter without equivocation that the oil in question does not meet the applicable standards, and there is nothing implausible about that assertion. Whether he can prove it remains to be seen, but dismissal at the pleading stage is not warranted.").

- *Robinson v. J.M. Smucker Co.*, No. 18-cv-04654-HSG, 2019 WL 2029069, at *3 (N.D. Cal. May 8, 2019) (allegations that the plaintiff purchased product thinking it was extra virgin olive oil sufficient and there is no requirement to disclose testing results at the pleadings stage).

- *Kanan v. Thinx Inc.*, No. CV 20-10341 JVS (JRPx), 2021 WL 4464200, at *4-5 (C.D. Cal. June 23, 2021) (concluding that the adequacy of the testing relates to the "merits of Plaintiffs' claims, which is inappropriate at the motion to dismiss stage.").

Because the sufficiency or methodology of testing or survey evidence cannot be resolved on the pleadings, a complaint need not include details about the testing. *Tye v. Wal-Mart Stores, Inc.*, No. SA CV 15-1615 (JCGx), 2016 WL 6138424, (C.D. Cal. Apr. 26, 2016), is instructive. There, the plaintiffs alleged that Wal-Mart's Great Value brand Pork & Beans in Tomato Sauce products did not contain any pork whatsoever, based on "rigorous scientific testing, including microscopic and chemical analysis[.]" *Id*. at *4. The complaint did not describe the laboratory testing further. On motion to dismiss, the *Tye*

1   court held that this pleading satisfied Rule 9(b) as plaintiffs also included photographs of the product

2   label stating the name of the product as "Pork & Beans in Tomato Sauce" and ingredients panel listing

3   pork. *Id*. at *5. Accordingly, the court held that the plaintiff had "sufficiently alleged which statements

4   are false or misleading, what is false or misleading about the statements, and why the statements are

5   false." *Id*.

6          The cases Walmart cites are inapposite. In *Aloudi v. Intramedic Research Group, LLC*, 729 Fed.

7   Appx. 514 (9th Cir. 2017), the plaintiff failed to identify *any* testing of the product at issue (a purported

8   weight loss pill) to support his allegation that the product could not produce weight loss. Similarly, in

9   *Martin v. Onnit Labs Inc.*, No. 2:23-cv-03737-FWS-KES, 2023 WL 8190712, at *5-6 (C.D. Cal. Oct.

10  18, 2023), the plaintiff did not test the product at issue (a supplement claiming to support memory, focus,

11  and cognitive processing speed). Further, although some of the studies tested supplements that shared

12  *some* ingredients with the covered product, the studies' parameters did not analyze participants'

13  memory, focus, or cognitive processing speed, which was the representation at issue. Lastly, in *Garland*

14  *v. The Kroger Co*., No. 24cv240-LL-JLB, 2025 WL 474914, at *7 (S.D. Cal. Feb. 12, 2025), the

15  complaint included only a summary allegation of the testing. By contrast, here the FAC alleges detailed

16  allegations regarding the methodology and results of Plaintiff's testing and independent testing by UC

17  Davis.[4]

18         Walmart's reliance on *Meyer v. Colavita USA Inc.*, No. 10–61793–CIV–

19  LENARD/O'SULLIVAN, 2011 WL 13216980, at *1 (S.D. Fla. Sept. 13, 2011) is also misplaced. In

20  *Meyer*, the plaintiffs alleged that the defendants' extra virgin olive oil products were "fake." *Id*. Rather

21  than conducting their own laboratory testing, the plaintiffs relied on a study conducted by the University

22  of California at Davis which involved both objective testing (chemical and physical standards) and

23  *highly subjective* testing ("organoleptic" or "sensory" tests). *Id*. at *2. The court concluded that the

24  plaintiffs' claims were speculative, in part because the UC Davis testing was "somewhat inconclusive."

25

26  _____

27  [4] If required, Plaintiff could provide the "specific date or place of the testing, and who conducted
    the testing." *Garland*, 2025 WL 474914, at *7. However, given the considerable detail explaining

28  the testing already contained in the FAC, this is unnecessary because such details do not address the
    sufficiency of the testing, nor could the Court reach the issue on the pleadings in any event.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

*Id.* at *5. Notably, "some of Defendants' samples passed *both* the objective criteria and more subjective organoleptic criteria as meeting the standards for extra virgin olive oil. Others did not, but [failed only] based upon failures of the more subjective test." *Id.* (emphasis added). In other words, all of the covered products passed the objective test. Here, unlike in *Meyer*, Plaintiff relies on his own independent laboratory testing, as well as the analysis of the Class Products performed by UC Davis, which employed purely objective standards, *i.e.*, the fatty acid and sterol profiles of the Class Products.

In sum, in each of the foregoing cases, the plaintiff either failed to conduct any testing, failed to sufficiently tie the testing to the covered product, and/or failed to establish a nexus between the testing and the representation at issue in the litigation. The same is not true here. Plaintiff clearly alleges that his investigation included testing and analysis of the Class Products performed by third-party laboratories, and which show that the Products are "adulterated with other oils." Because Plaintiff's claims rely on the Products' failure to meet objective chemical standards (which must be accepted as true on a motion to dismiss), they are not speculative.

### 2. The FAC's Allegations Sufficiently Inform Defendant of the Basis of Plaintiff's Claims and Theory of Liability

As Judge Klausner recognized in denying Defendant's analogous motion to dismiss in *Golikov*, this case is straightforward: Defendant holds its product out to be avocado oil when it is adulterated with other oils. The notion that Defendant lacks sufficient notice of Plaintiff's claims or theory of liability strains credulity. And to the extent this is just another way of challenging the insufficiency of the testing allegations, Defendant's argument should be rejected for the reasons stated above.

In support of this argument, Defendant relies on *McConnon*, which Plaintiff distinguished above and which Judge Klausner found inapposite. Defendant also cites *Figy v. Frito-Lay North America, Inc.*, 67 F. Supp. 3d 1075 (S.D. Fla. 2015), where the plaintiff alleged that the "Made with All Natural Ingredients" labeling was misleading but failed to provide "a plausible objective definition of the term 'All Natural' or that [their] subjective definition of the term 'All Natural' is one that is shared by the reasonable consumer." *Id.* at 1089-90; *see also Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1090 (N.D. Cal. 2018) (Plaintiff alleged that "healthy" labeling was fraudulent due

to the presence of "excess[ive] added sugar" but failed to specify the *amount* of added sugar, as opposed to total sugar). But *Figy* is distinguishable because there the court required the plaintiff to provide an "objective definition" of "All Natural," which was **the allegedly misleading term on the label**. *Figy*, 67 F. Supp. 3d at 1089-90. Here, the misleading term on the label is not "pure," as is made clear in the FAC. As the entity responsible for sourcing, manufacturing, packaging, and/or selling the Products, Defendant cannot credibly claim that it does not understand what Plaintiff means when he alleges that the Products are "adulterated" with other oils because this term is objectively defined:

> A food shall be deemed to be adulterated . . . if any substance has been added thereto or mixed or packed therewith so as to increase its bulk or weight, or reduce its quality or strength, or to make it appear better or of greater value than it is.

21 U.S.C. § 342(b)(4).

Moreover, it has long been understood that "adulterated" not only refers to food containing additives with deleterious health effects, but also the "fraud on the public" adulteration that "is not injurious to health[,]" but nevertheless leaves consumers without the benefit of the bargain. Charles D. Aaron, *Adulterated and Misbranded Food*, 74 Buffalo Med. J. 1, 5 (1918) (discussing the history of adulterated foods, including honey adulterated with glucose and beef tallow adulterated with lard). The alleged adulteration of the avocado oil here is analogous to the tallow discussed by Dr. Aaron over 100 years ago—cooking fat that is advertised as derived from one source while containing some other fat entirely.

### 3. The FAC Sufficiently Alleges Materiality

The California Supreme Court has held that "[a] misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question' . . . and as such materiality is generally a question of fact unless the 'fact misrepresented is *so obviously unimportant* that the jury could not reasonably find that a reasonable man would have been influenced by it.'" *Engalla v. Permanente Medical Grp., Inc.*, 938 P.2d 903, 977 (Cal. 1997) (internal citation omitted) (emphasis added); *see also Doe v. SuccessfulMatch.com,* 70 F. Supp. 3d 1066, 1081 (N.D. Cal. 2014) ("as a general matter, the 'materiality of a misrepresentation is typically an issue of fact, and therefore should not be decided

1  at the motion to dismiss stage.'") (quoting *Hinojos v. Kohl's Corp.*, 718 F. 3d 1098, 1107 n.7 (9th

2  Cir. 2013)). Defendant has not, and cannot, establish at this early stage of the litigation that the

3  "Avocado Oil" representation is "so obviously unimportant that the jury could not reasonably find"

4  that it is material. *Engalla*, 938 P.2d 903 at 977.

5      As the Northern District of California elucidated in *Samet v. Proctor & Gamble Co.*, "Most

6  important, ingredients matter. Representations about specific ingredients' presence or absence in a

7  product are almost self-evidently material in that an advertiser is intending to make a consequential

8  effect on a consumer." No. 12-cv-01891-RS, 2019 WL 13167115, at *7 (N.D. Cal. Jan. 15, 2019)

9  (internal citation omitted). As the court further explained: "This is distinct from cases dealing with

10  vague, general statements, such as 'all natural,' which may be of uncertain materiality to a

11  consumer." *Id*.

12      Consequently, Defendant makes the red herring argument that the FAC "fails to allege "what

13  these [adulterant] ingredients are and how they are" not avocado oil." MTD at 19. Again, this is a

14  restatement of its prior arguments, and it has no bearing on the materiality of the Avocado Oil claim.

15  As relevant in this context, the fact that Defendant's false advertising pertained to the very nature

16  of its "Avocado Oil" Product establishes its materiality. *See POM Wonderful LLC v. Purely Juice,*

17  *Inc.*, No. CV-07-02633 CAS (JWJx), 2008 WL 4222045, at *11 (C.D. Cal. July 17, 2008) is

18  instructive ("The fact that Purely Juice's false advertising pertained to the very nature of its juice

19  product establishes its materiality."); *see also Johnson & Johnson Vision Care, Inc. v. 1-800*

20  *Contacts, Inc.*, 299 F.3d 1242 (11th Cir. 2002) ("A plaintiff may establish this materiality

21  requirement by proving that 'the defendants misrepresented an inherent quality or characteristic of

22  the product.'") (citation omitted).

23      **E.      The FAC Sufficiently Alleges a Breach of Implied Warranty Claim**

24      Defendant contends that Plaintiff's breach of implied warranty claim fails because he "does not

25  allege the [Product] is not fit for consumption." MTD at 21. That is not Plaintiff's argument here, nor

26  has it ever been Plaintiff's argument. This court held as much upon review of the first Motion to Dismiss

27  in this case: "Hawkins does not allege that the avocado oil was unfit for consumption." MTD Or. at 8.

28

-14-

But California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1). Further, the statute provides that for good to be merchantable, they must "[c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f); *see also* Compl. ¶ 74 (citing Cal. Com. Code § 2314(2)(f)). "[A]n implied warranty claim may also be predicated on allegations that the product fails to 'conform to the promises or affirmations of fact made on the container or label if any.'" *Saidian v. Krispy Kreme Doughnut Corp.*, No. 2:16-cv-08338-SVW (AFMx), 2017 WL 945083, at *4 n.3 (C.D. Cal. Feb. 27, 2017) (citing Cal. Comm. Code § 2314(2)(f)).

Here, as discussed above, Plaintiff plausibly alleges that the Avocado Oil Representation constitutes, at minimum, an implied promise that the Products are only avocado oil, and the Products failed to conform with that promise. FAC ¶ 97. This is sufficient to state a claim for breach of implied warranty under California law. *See, e.g.*, *James v. Chocmod USA Inc.*, No. 1:22-cv-01435 JLT SKO, 2025 WL 950509, at *11-12 (E.D. Cal. Mar. 28, 2025); *Banks v. R.C. Bigelow, Inc.*, 536 F. Supp. 3d 640, 650 (C.D. Cal. 2021).

### F.    The FAC Sufficiently Alleges an Intentional Misrepresentation Claim

Walmart argues that Plaintiff's intentional misrepresentation claim should be dismissed because he fails to allege the requisite fraudulent intent. MTD at 22. But while a plaintiff must plead actual or constructive knowledge of the falsity of a challenged advertising claim, "Rule 9(b)'s heightened pleading requirements do not apply to allegations regarding an accused's state of mind—thus, knowledge need only be alleged *generally* to state a valid claim for fraud." *Swingless Golf Club Corp. v. Taylor*, 679 F. Supp. 2d 1060, 1067 (N.D. Cal. 2009); *see also* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). This is because, realistically, courts cannot expect a plaintiff to always have insights into a defendant's state of mind, nor are factual allegations supporting a defendant's alleged knowledge necessary to put defendants on notice of the claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (Rule 8 does not require "detailed factual allegations"); *Concha v. London*, 62 F. 3d 1493, 1503 (9th Cir. 1995); *Comerica Bank v. McDonald*, No. C-06-03735 RMW, 2006 WL 3365599, at *2 (N.D. Cal. Nov. 17, 2006) (ruling the requirement for

-15-

1  specificity relaxes when the defendant necessarily has full information about the facts or when the facts

2  lie more within the defendant's knowledge).

3        Here, Plaintiff alleges not only that Walmart knew or should have known that the "Avocado Oil"

4  claim was false, but also that the "Avocado Oil" claim would mislead reasonable consumers into buying

5  the Avocado Oil believing that they are buying and consuming unadulterated avocado oil. Walmart's

6  deliberate and conspicuous placement of the Avocado Oil claim on the consumer-facing label of the

7  Product supports Plaintiff's general allegations of intent. Compl. ¶ 84. Further, a defendant's state of

8  mind is generally a question of fact. *Quality Wash Group V, Ltd. v. Hallak*, 50 Cal. App. 4th 1687, 1696

9  (1996) ("Whether a defendant had reasonable ground for believing his or her false statement to be true

10  is ordinarily a question of fact."). Accordingly, Plaintiff has sufficiently alleged Walmart's knowledge

11  to support his intentional misrepresentation claim.

12      **G.    The Court Should Not Strike Plaintiff's Request for Punitive Damages**

13        Defendant's request to dismiss Plaintiff's prayer for punitive damages should be rejected

14  because "a request for punitive damages is not a 'claim' and is not the proper subject of a motion to

15  dismiss" under Rule 12(b)(6). *Shimy v. Wright Med. Tech., Inc*., No. 2:14-cv-04541-CAS(RZx), 2014

16  WL 3694140, at *4 (C.D. Cal. July 23, 2014); *Oppenheimer v. Sw. Airlines Co*., No. 13-CV-260-IEG

17  (BGS), 2013 WL 3149483, at *3 (S.D. Cal. June 17, 2013) ("Punitive damages constitute a remedy, not

18  a claim."). "Federal Rule of Civil Procedure 54 underscores the impropriety of dismissing requests for

19  punitive damages under Rule 12(b)(6)." *Elias v. Navasartian*, No. 1:15-cv-01567, 2017 WL 1013122,

20  at *5 (E.D. Cal. Feb. 17, 2017). Under Rule 54(c), the Court may grant appropriate relief at final

21  judgment even if Plaintiff "has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). "It thus

22  makes little sense to require detailed factual allegations to support a demand for certain damages when

23  such damages may ultimately be awarded even if they were never pled in the complaint." *Elias*, 2017

24  WL 1013122, at *5. "Because punitive damages are but a remedy, and thus neither constitutes a claim

25  nor pertains to whether any claim has been stated, requests for punitive damages provide no basis for

26  dismissal" under Rule 12(b)(6). *Oppenheimer*, 2013 WL 3149483, at *4.

27        Discovery will reveal the identities of any responsible corporate officers, directors, or managing

28  agents who may have perpetrated, authorized, or knowingly ratified the fraudulent conduct alleged in

the FAC. For this reason, and others stated above, it would be premature and inappropriate to dismiss Plaintiff's request for punitive damages. *Elias*, 2017 WL 1013122, at *5; *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 573 (N.D. Cal. 2020) (denying motion for summary judgment and concluding "whether plaintiffs can satisfy the heightened fraud or malice standard for punitive damages under the CLRA should be determined by the jury."); *Traynor v. Lexington Insurance Co*., No. 2:09–cv–02990–FMC–SSx, 2009 WL 10675395, at *2-3 (C.D. Cal. Jun. 8, 2009) (denying a motion to strike, a "drastic remedy," because "at this early stage of this litigation, it is unknown whether the Plaintiffs will be able to develop facts to demonstrate that they are entitled to an award of punitive damages.").

Relatedly, Defendant's request amounts to an improper motion to strike under Rule 12(f), which allows a court to strike "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). First, if Defendant seeks to strike any portion of Plaintiff's pleading, the present motion is not the appropriate means to do so. Even if it were properly before the court, such a motion would fail on the merits because a request for punitive damages is not "redundant, immaterial, impertinent, or scandalous matter." *Id*. Second, "a request for punitive damages is not a 'claim' and is not the proper subject of a motion to dismiss" under Rule 12(b)(6). *Shimy*, 2014 WL 3694140, at *4; *Oppenheimer*, 2013 WL 3149483, at *3. Third, motions to strike "are disfavored and infrequently granted." *Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005). They "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Id*. Still, and despite all of this, Defendant raises the argument here. Moreover, any conduct that could merit punitive damages would overlap entirely with conduct relating to liability.[5] This discovery must be taken, regardless, and Defendant will suffer no prejudice if this requested remedy remains through discovery. *See Garcia-Barajas v. Nestle Purina Petcare Co.*, No. 09-cv-00025-OWW-DLB, 2009 WL 2151850, at *2 n.2 (E.D. Cal. Jul. 16, 2009).

---

[5] Discovery relating solely to punitive damages, such as Defendant's net worth, can be addressed at a later juncture, although it seems highly unlikely any punitive damages award would exceed Walmart's ability to pay, and thus, this should not be a contested issue at any juncture in the case.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

1  **IV.**  **CONCLUSION**

2          For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's

3  Motion to Dismiss the FAC in its entirety.

4

5  DATED: May 9, 2025                          Respectfully submitted,

6                                              **FARUQI & FARUQI LLP**

7
                                               By: */s/ Lisa T. Omoto*
8                                                   Lisa T. Omoto

9                                              **THE WAND LAW FIRM, P.C.**
10                                             Aubry Wand

11                                             *Attorneys for Plaintiff and the Putative Class*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC