JACOB M. HARPER (State Bar No. 259463)
  jacobharper@dwt.com
HEATHER F. CANNER (State Bar No. 292837)
  heathercanner@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California  90017-2566
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

Attorneys for Defendant
WALMART INC.

IN THE UNITED STATES DISTRICT COURT

THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW HAWKINS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WALMART INC., a corporation; and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No. 1:24-CV-00374-KES-SKO<br><br>**DEFENDANT WALMART INC.'S NOTICE OF SUPPLEMENTAL AUTHORITY RELEVANT TO MOTION TO DISMISS**<br><br>Date:       June 2, 2025<br>Time:       1:30 p.m.<br>Dept.:      Courtroom 6<br><br>Assigned to the Hon. Kirk E. Sherriff<br><br>Action Filed:  February 20, 2024<br>Action Removed: March 29, 2024 |

Pursuant to Local Rule 230(m)(2), Defendant Walmart Inc. (Walmart) hereby provides notice of *two* supplemental authorities relevant to its Motion to Dismiss (ECF No. 26).

*1.*    ***Marshall v. Proctor & Gamble.***   On September 17, 2025, after Walmart filed its Motion to Dismiss and Reply, the Honorable Araceli Martinez-Olguin of the Northern District of California issued an order dismissing plaintiff's complaint in *Marshall v. Proctor & Gamble Co.*, No. 25-cv-00923-AMO (N.D. Cal.), attached hereto as **Exhibit A**.  Pursuant to Local Rule 230(m)(2), Walmart provides the following citation: *Marshall v. Proctor & Gamble Co.*, No. 25-cv-00923-AMO (N.D. Cal.) (dismissing plaintiff's claims that "Clearblue Menopause State Indicator" that tested for Follicle-Stimulating Hormone (FSH) was misleading because "FSH alone cannot indicate menopause stage," as plaintiffs failed to plausibly allege falsity because their allegations "rest[] on only a portion of the Product to the ignorance of the label's clear reference to the Product's app and algorithm" and "are contradicted by materials Plaintiffs incorporated into the Complaint").

*2.*    ***Golikov v. Walmart Inc.***   On November 6, 2025, after Walmart filed its Motion to Dismiss and Reply, the Honorable R. Gary Klausner of the Central District of California issued an order awarding attorney's fees as sanctions against plaintiff's attorneys in *Golikov v. Walmart, Inc.*, No. 2:24-cv-08211-RGK-MAR (C.D. Cal.), attached hereto as **Exhibit B**. Pursuant to Local Rule 230(m)(2), Walmart provides the following citation: *Golikov v. Walmart, Inc.*, No. 2:24-cv-08211-RGK-MAR (C.D. Cal.) (granting sanctions against plaintiff's attorneys in the form of attorney's fees under 28 U.S.C. § 1927 based on "Plaintiff's continued assertion" of "false fact" throughout the litigation).

DATED: November 20, 2025

DAVIS WRIGHT TREMAINE LLP
JACOB M. HARPER
HEATHER F. CANNER


By: *s/Jacob M. Harper*
    Jacob M. Harper
Attorneys for Defendant
Walmart Inc.

WALMART'S NOTICE OF SUPPLEMENTAL AUTHORITY
Case No. 1:24-CV-00374-KES-SKO

# EXHIBIT A

2025 WL 2662863
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

Cassandra MARSHALL, et al., Plaintiffs,
v.
PROCTER & GAMBLE COMPANY, et al., Defendants.

Case No. 25-cv-00923-AMO
|
Signed September 17, 2025

**Attorneys and Law Firms**

Annick Marie Persinger, Tycko & Zavareei LLP, Los Angeles, CA, Gemma Seidita, Shana Khader, Pro Hac Vice, Tycko & Zavareei LLP, Washington, DC, for Plaintiffs.

Norman C. Simon, Pro Hac Vice, Eileen Miriam Patt, Pro Hac Vice, Irene Weintraub, Pro Hac Vice, Herbert Smith Freehills Kramer (US) LLP, New York, NY, Lisa Kobialka, Herbert Smith Freehills Kramer (US) LLP, Redwood Shores, CA, for Defendants.

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Re: Dkt. No. 24

Araceli Martinez-Olguin, United States District Judge

**\*1** This is a putative class action involving claims that the label of Defendants' product is false and misleading. Defendants SPD Swiss Precision Diagnostics GmbH ("SPD") and The Procter & Gamble Company ("P&G") together moved to dismiss the Complaint. Defendants' motion was heard before this Court on September 11, 2025. Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS** the motion for the following reasons.

**I. BACKGROUND** [1]

[1] This factual background is taken from the allegations in the operative complaint, which the Court accepts as true and construes in the light most favorable to Plaintiffs for the purpose of the instant motion. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The product at issue is the Clearblue Menopause Stage Indicator (the "Product"), manufactured by SPD and marketed and distributed by P&G. Compl. ¶¶ 10-11. Plaintiffs Cassandra Marshall and Raquel Riley, both citizens of California, separately purchased the Product in 2023. Compl. ¶¶ 8-9. The Product works by capturing data through five Follicle-Stimulating Hormone ("FSH") urine tests over the course of 10 days and is designed for use with an accompanying cell phone application ("the app"). Compl. ¶¶ 15-16, *see also* Ex. A at 6-7. [2] An algorithm in the app guides users on how and when to test, and it combines FSH results with age and menstrual cycle history to calculate "likely" menopause stage. Compl., Ex. A at 6-7. Consumers can generate a personalized report of their FSH results combined with a log of their symptoms and cycle history to share with their healthcare professionals to have an informed conversation about menopause. *Id.* "Armed with [these] results," an online product description appended to the Complaint states, "this Clearblue Menopause Stage Indicator kit can help [a woman] understand more about what is going on with [her] body and enable a more meaningful conversation with [her] doctor[.]" Compl., Ex. A at 7.

[2] The documents attached to the Complaint as well as those submitted by Defendants are properly considered on a motion to dismiss under the incorporation by reference doctrine. A document is incorporated by reference when the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)). This doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken – or doom – their claims." *Id. at 1002*. At the hearing, Plaintiffs agreed that the Court could consider these materials.

FSH levels increase as a woman enters menopause, according to a Food and Drug Administration ("FDA") webpage cited by Plaintiffs. *See* Simon Decl., Ex. A ("FDA Guidance"); Compl. ¶ 24. While at-home kits that measure FSH in urine "do not detect menopause or perimenopause," they "may help

indicate if you are in menopause or perimenopause." *Id.* The FDA guides consumers to "use this test if you want to know if your symptoms, such as irregular periods, hot flashes, vaginal dryness, or sleep problems are part of menopause.... This test may help you be better informed about your current condition when you see your doctor." *Id.*

**\*2** FSH alone cannot indicate menopause stage because FSH levels vary, *see* Compl. ¶ 23, and a test for FSH levels cannot provide an accurate snapshot of a person's menopause status, *see id.* ¶ 27. Plaintiffs allege that they were misled by the label into believing that the Product can "indicate your menopause stage by measuring FSH." Compl. ¶ 2. Immediately below the challenged claim, "Menopause Stage Indicator," the front label states that the "Likely menopause stage given *only* when test sticks are used with FREE app," and the side label further explains that the app "combines 5 FSH test results with other factors including cycle history and age to calculate your likely menopause stage." Compl. Ex. A. at 2 (emphasis in original); *see also id.* (back label explains: "app indicates your likely menopause stage"). A superscript one (" [1] ") indicating a footnote follows multiple label statements, leading the reader to a text box on the side panel that reads, "[a] confirmed menopause stage diagnosis can only be made by a physician after all clinical and laboratory findings have been evaluated." Compl. ¶ 18; Ex. A at 2.

Based on the alleged misleading nature of the Product label, Plaintiffs advance claims for violations of California Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code § 1750, et seq., and California Unfair Competition Law ("UCL"), Cal. Business & Professions Code § 17200, et seq., on behalf of a putative California subclass, as well as violations of the "consumer protection acts of 50 states" on behalf of a putative nationwide class. Compl. ¶¶ 59-67.

## II. DISCUSSION

Defendants together move to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim based on a lack of falsity in the Product label and failure to plausibly allege a theory of damages. *See* Dkt. No. 24 ("Mot."). P&G alternatively moves for dismissal under Rule 12(b)(2) for lack of personal jurisdiction over the Ohio-based corporation. *Id.* Because the Court finds the claims legally insufficient, it does not reach P&G's personal jurisdiction argument.

### A. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, it need not accept legally conclusory statements unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679.

Review is generally limited to the contents of the complaint, although the court can also consider a document on which the complaint relies if the document is central to the claims asserted in the complaint, and no party questions the authenticity of the document. *See Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). The court may consider matters that are properly the subject of judicial notice, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001), and may also consider documents referenced extensively in the complaint and documents that form the basis of the plaintiffs' claims. *See No. 84 Emp'r-Teamster Jt. Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir. 2003).

**\*3** Plaintiffs' claims that sound in fraud must also meet the heightened pleading standard of Federal Rule of Civil

Procedure 9(b). *See* *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) requires a party alleging fraud or mistake to state with particularity the circumstances constituting fraud or mistake. To satisfy this standard, the "complaint must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation and internal quotation marks omitted). If dismissal is warranted, it is generally without prejudice, unless it is clear that the complaint cannot be saved by any amendment. *Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005).

**B. Reasonable Consumer Standard**

P&G argues that Plaintiffs' CLRA and UCL claims fail because none of the theories advanced demonstrate that a reasonable consumer would find the Product labels false or misleading. To protect its citizens from unfair, deceptive, or fraudulent business practices, California has enacted a number of consumer protection statutes. The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any customer." Cal. Civ. Code § 1770(a). Similarly, the UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. These claims are governed by the "reasonable consumer" test. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

"Under the consumer protection laws of California[,] ... claims based on deceptive or misleading marketing must demonstrate that a 'reasonable consumer' is likely to be misled by the representation." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021); accord *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003). "The California Supreme Court has recognized that these laws prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Id.* at 938 (internal quotation marks omitted) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)). The reasonable consumer test requires more than a mere possibility that defendant's product "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). Rather, the test requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.*; *see also* *Moore*, 4 F.4th at 881.

Generally, "whether a reasonable consumer would be deceived ... [is] a question of fact not amenable to determination on a motion to dismiss." *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014); *see* *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). "However, in rare situations a court may determine, as a matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not plausible." *Ham*, 70 F. Supp. 3d at 1193.

In *Williams*, the Ninth Circuit determined that a reasonable consumer could be deceived by images on a fruit snack label depicting a number of different fruits, "potentially suggesting (falsely) that those fruits or their juices are contained in the product." *Williams*, 552 F.3d at 939. The appellate panel rejected the argument that a misrepresentation on the front of the package could be cured by a disclaimer on the back of the package, instead concluding "reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the package." *Id.* at 939-40.

**\*4** Since *Williams*, the Ninth Circuit has further clarified that, when a front label is ambiguous rather than unambiguously deceptive, "the ambiguity can be resolved by reference to the back label." *McGinity*, 69 F.4th at 1099. In *McGinity*, the plaintiff alleged that the packaging of "Pantene Pro-V Nature Fusion" shampoo and conditioner products was deceptive because the label suggested the products "are natural, when, in fact, they contain non-natural and synthetic ingredients." *Id.* at 1096. As a result, the Ninth Circuit considered the back label, and it observed that mentions of avocado oil, together with an ingredient list that contained synthetic ingredients, clarified that "Nature Fusion" referred to a mix of natural and synthetic ingredients. *Id.* at 1099. Building on *McGinity*, the Ninth Circuit explained that "a front label is ambiguous

when reasonable consumers would necessarily require more information before reasonably concluding that the label is making a particular representation" and that this ambiguity triggers a consumer's obligation to search a back label. *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 781 (9th Cir. 2024). For example, "the presence of an asterisk alone puts a consumer on notice that there are qualifications or caveats" may create an ambiguity that requires a reasonable consumer to look further. *Whiteside*, 108 F.4th at 785.

Based on the reasonable consumer standard, Defendants advance three arguments on which Plaintiff's claims of falsity fall short. The Court considers each.

### 1. The Full Context of the Label Dispels Plaintiffs' Theory of Falsity

Plaintiffs theorize that the Product name – Clearblue Menopause Stage Indicator – misleads reasonable consumers into believing that the test sticks "indicate[ ] your menopause stage by measuring FSH." Compl. ¶ 2. However, "Plaintiffs are not free to excise or ignore words on the label to manufacture" falsity. *McWhorter v. Procter & Gamble Co.*, No. 24-CV-00806-AMO, 2025 WL 948061, at *7 (N.D. Cal. Mar. 28, 2025). The front label makes clear that a user's "likely" menopause stage is given "**only** when test sticks are used with FREE app," and the side label explains that the app "combines 5 FSH test results with other factors including cycle history and age to calculate your likely menopause stage." Compl., Ex. A. at 2 (emphasis in original). Plaintiffs point to multiple online sources to contend that the Product's five sticks to detect FSH in urine collectively indicate nothing about the menopause transition or menopause. *See* Compl. ¶ 21. But Plaintiffs' allegations that the FSH "pee sticks" are ineffective on their own does not account for the label's statement that the related app employs an algorithm to combine FSH measurements and other factors including cycle history and age to provide the user their likely menopause stage. Because Plaintiffs' assertion of falsity rests on only a portion of the Product to the ignorance of the label's clear reference to the Product's app and algorithm, Plaintiffs have not alleged that the reasonable consumer is likely to be misled. *See Moore*, 4 F.4th at 881.

### 2. Plaintiffs' Documents Refute their Contentions about the Product's Menopause Staging Criteria

Plaintiffs seek to avoid focus on the deficiencies in their fundamental allegations of falsity regarding the FSH tests by attacking as "pseudoscience" the menopause stages reported by the Product. Opp. at 13-14. In essence, Plaintiffs suggest that these stages mirror irrelevant staging criteria that are not used in a clinical setting and which do not consider FSH levels. Opp. at 13-15 (citing Compl. ¶ 22). Plaintiffs' claim appears predicated solely on a cited source's statement regarding the origin of the four stages contemplated by the test, which reads, "I suspect (although I don't know for sure) [Clearblue is] using the staging criteria from the Study of Women's Health Across the Nation ('SWAN')." Simon Decl., Ex. C (Gunter, "Don't Waste Your Money on the Clearblue Menopause Journey Test," *The Vajenda* (Sept. 8, 2023), cited with permalink at Compl. ¶ 22 n.6). This statement does not invalidate or render the stages listed on the Product label false. To the contrary, the equivocal nature of the statement demonstrates the speculative nature of Plaintiffs' theory regarding the staging criteria and undermines the plausibility of Plaintiffs' claims. *See Wertymer v. Walmart, Inc.*, 142 F.4th 491, 498 (7th Cir. 2025) (affirming dismissal of product advertising claims and noting, "The documents upon which [plaintiff] relies and has made essential to his claim lay bare the speculative nature of the complaint.").

**\*5** Further, the premises that the stages themselves are false because they are based on SWAN and that the stages cannot rely on FSH levels are both contradicted by another source Plaintiffs incorporate into their pleading. A separate article cited by Plaintiffs quotes Clearblue's head of scientific and medical affairs, who explains that the Product stages rest upon "a widely used tool to assess the transition to menopause, known as the Stages of Reproductive Aging Workshop [STRAW], which considers F.S.H. levels among a number of other factors." Simon Decl., Ex. E (Gupta, "Can a New At-Home Test Tell You if You're in Menopause?," *The New York Times* (Oct. 2, 2023), cited with permalink at Compl. ¶ 28 n.12). Plaintiffs describe Defendants' argument that the Product's stages are in line with STRAW, not SWAN, as a factual assertion outside the Complaint that "raises issues appropriate for expert testimony at a later stage." Opp. at 15 n.2. But this is not a dispute of fact. Rather, Plaintiffs' allegations of falsity regarding the Product's stages are contradicted by materials Plaintiffs incorporated into the Complaint. Such a contradiction shows that Plaintiffs'

allegations of inherent falsity are implausible. *See Bounthon v. Procter & Gamble Co.*, No. 23-CV-00765-AMO, 2024 WL 4495501, at *8 (N.D. Cal. Oct. 15, 2024); *see also Wertymer*, 142 F.4th at 498 (stating that plaintiff "doomed his complaint by referring to and relying upon documents that also belie his claims by offering 'obvious alternative explanations' for the complaint's factual allegations" (quoting ⚑*Twombly*, 550 U.S. at 567)). The Court need not delve deeper – Plaintiffs' assertion of falsity based on the Product's stages falls short of the plausibility standard, and the claims must fail.

### 3. Plaintiffs' Documents Contradict the Allegation that FSH Measurements are Useless

Plaintiffs also allege the Product's claims are false regarding the efficacy of FSH tests to indicate menopause because FSH levels can fluctuate, Compl. ¶¶ 21, 26, but Plaintiffs fail to allege or identify any source that plausibly undermines that this Product's protocol (alternating testing every other day for 10 days) and algorithm accounts for FSH variability in indicating a likely menopause stage.[3] Though Plaintiffs aver that "experts" have reached consensus that FSH measurements "do not factor into the determination of menopause stage at all," the same reports cited by Plaintiffs contradict and undercut the plausibility of that assertion. *See* Compl. ¶¶ 21-33. For example, the FDA source cited by Plaintiffs notes, "when you enter menopause ... your FSH levels [ ] increase" and at-home FSH test kits "do not detect menopause" but "may help indicate if you are in menopause or perimenopause." Simon Decl., Ex. A (FDA Guidance, linked at Compl. ¶ 24 n.8). The FDA further states that "[y]ou should use this test if you want to know if your symptoms, such as irregular periods, hot flashes, vaginal dryness, or sleep problems are part of menopause ... [and it] may help you be better informed about your current condition when you see your doctor." *Id.* The FDA also explains that "[s]ome home menopause tests are identical to the one your doctor uses. However, doctors would not use this test by itself. Your doctor would use your medical history, physical exam, and other laboratory tests to get a more thorough assessment of your condition." *Id.* Similarly, another source on which Plaintiffs rely states that doctors look to FSH levels in conjunction with other factors "to get the full picture," explaining that "a doctor will likely check hormone levels and review your cycle history while reviewing symptoms to look for menopause." Simon Decl., Ex. D (Fischer, "Should you try an at-home menopause test?," *Motherly* (Sept. 5, 2023), cited

with permalink at Compl. ¶ 29 n.13). Further still, Plaintiffs incorporate a source that confirms the Product is in line with "a widely used tool to assess the transition to menopause, known as the Stages of Reproductive Aging Workshop, which considers F.S.H. levels among a number of other factors." Simon Decl., Ex. E (Gupta, "Can a New At-Home Test Tell You if You're in Menopause?," *The New York Times* (Oct. 2, 2023), cited with permalink at Compl. ¶ 28 n.12). All these sources contradict Plaintiffs' basic contention that FSH levels are provably irrelevant in assessing menopause transition stages. *Cf.* Compl. ¶ 21. Accordingly, Plaintiffs fail to allege falsity. *See Bounthon*, 2024 WL 4495501, at *8-9 (dismissing claims where studies on which plaintiffs relied to allege falsity "undercut the plausibility of their claims" and called into question the inferences for which they were cited).

[3]    To the extent Plaintiffs' theory rests on the Product's alleged claim that it can indicate the user's menopause stage akin to a doctor's diagnosis, Compl. ¶¶ 21, 27, the front label makes clear that only a "likely" stage is provided, and the label includes a superscript numeral indicating a footnote (like an asterisk) directing consumers to "see sides of pack" which state: "A confirmed menopause stage diagnosis can only be made by a physician after all clinical and laboratory findings have been evaluated." *Id.* "[T]he presence of an asterisk alone puts a consumer on notice that there are qualifications or caveats[.]" ⚑*Whiteside*, 108 F.4th at 785. Any assertion of falsity is undermined by the clarification of the Product's limitations.

### C. Leave to Amend

**\*6** "Generally, Rule 15 advises the court that leave shall be freely given when justice so requires. This policy is to be applied with extreme liberality." ⚑*Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotations and citations omitted). Courts may deny leave to amend "only if there is strong evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc." ⚑*Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting ⚑*Foman v. Davis*, 371 U.S. 178, 182 (1962)) (modification in original).

The futility of amendment factor weighs in favor of denying leave to amend where "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim[.]" *See Ross v. AT&T Mobility, LLC*, No. 19-CV-06669-JST, 2020 WL 9848733, at *4 (N.D. Cal. Dec. 18, 2020) (citations omitted). That is the case here. As discussed above, Plaintiffs' claims fail the reasonable consumer test as a matter of law. Reasonable consumers expect that the Product works by combining FSH measurements with other factors in the app, and Plaintiffs fail to allege that the Product's app and algorithm cannot indicate a user's likely menopause stage. Additionally, the Product puts the reasonable consumer on notice that "[a] confirmed menopause stage diagnosis can only be made by a physician after all clinical and laboratory findings have been evaluated." Compl. ¶ 18; Ex. A at 2. Plaintiffs' Complaint expressly incorporates a range of sources that contradicts Plaintiffs' fundamental assertions of falsity, including the purported uselessness of FSH level testing and the purported falsity of the menopause stages. Because "[a] party cannot amend pleadings to directly contradic[t] an earlier assertion made in the same proceeding," any withdrawal of the contradictory sources or additional allegations cannot possibly resolve the implausibility that infects Plaintiffs' Complaint. 🚩*Airs*

*Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (internal quotation marks and citation omitted). Moreover, when afforded the opportunity at the hearing to explain how the pleading could be amended to avoid such potential contradiction within the allegations and plausibly state a claim, Plaintiffs' counsel failed to provide a meaningful response. Accordingly, the Court determines that further amendment would be futile and exercises its discretion to deny leave to amend. 🚩*Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss for failure to state a claim. Because Plaintiffs' claims fail as a matter of law, the Court **DISMISSES** the claims with prejudice.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 2662863

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

# EXHIBIT B

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-08211-RGK-MAR | | Date | November 6, 2025 |
|---|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

**Proceedings:**   (IN CHAMBERS) Order Re: Motion for Sanctions Pursuant to 28 U.S.C. Section 1927 and the Court's Inherent Authority [DE 94]

### I.   INTRODUCTION

On December 30, 2024, Edie Golikov ("Plaintiff") filed a First Amended Class Action Complaint ("FAC") against Walmart Inc. ("Defendant") alleging: (1) violation of California's False Advertising Law; (2) violation of California's Consumer Legal Remedies Act; (3) violation of California's Unfair Competition Law; (4) breach of express warranty; (5) negligent misrepresentation; (6) intentional misrepresentation; and (7) quasi contract. (ECF No. 31.) Plaintiff sought injunctive relief, restitution, damages, and punitive damages.

On February 27, 2025, the Court certified the class. (ECF No. 62.) Also on February 27, 2025, following Defendant's Motion to Dismiss, the Court dismissed the claim for punitive damages. (ECF No. 63.) On June 10, 2025, the Court granted Defendant's Motion to Compel Arbitration and Stay Proceedings. (ECF No. 81.)

Presently before the Court is Defendant's Motion for Sanctions in the form of attorney's fees under 28 U.S.C. § 1927. (ECF No. 94.) For the following reasons, the Court **GRANTS** the Motion for Sanctions in the form of attorney's fees against Plaintiff's attorneys.

### II.   FACTUAL BACKGROUND

Defendant's Motion for Sanctions stems from Plaintiff's continued assertion that Plaintiff purchased avocado oil on November 14, 2021 "from a Walmart store." (*See* Compl. ¶ 6, ECF No. 1; FAC ¶ 6, ECF No. 31; Opp. Mot. Dismiss at 11, ECF No. 41.) However, on April 17, 2025, in response to Defendant's first set of interrogatories, Plaintiff revealed that she used a Walmart.com "online account on November 14, 2021 to purchase Walmart Great Value Avocado Oil." (Harper Decl., Ex. B at 2, ECF No. 66-3.) This revelation was made four months after Plaintiff filed the FAC. By using a Walmart.com online account to buy the avocado oil, Plaintiff agreed to Defendant's Privacy Policy and

Case 2:24-cv-08211-RGK-MAR    Document 98    Filed 11/06/25    Page 2 of 5    Page ID
#:2240
Case 1:24-cv-00374-KES-SKO    Document 35    Filed 11/20/25    Page 12 of 15

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | | Date | November 6, 2025 |
|---|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | | |

Terms of Use, which entered Plaintiff into a binding arbitration agreement and waived class action. (*See* Krsulic Decl., Ex. A ¶ 20, ECF No. 66-9.)

## III.    JUDICIAL STANDARD

Under § 1927, an attorney may be required to pay "excess costs, expenses, and attorneys' fees" for "multipl[ying] the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Sanctions under § 1927 apply after the initial pleadings to that which prolongs proceedings. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986). "Sanctions pursuant to section 1927 must be supported by a finding of subjective bad faith." *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015). Bad faith is shown by (1) knowingly or recklessly raising a frivolous argument or (2) arguing a meritorious claim for the purpose of harassment. *Id.* An action is frivolous when "the result is obvious or the arguments of error advanced are wholly without merit." *Int'l Union of Petroleum & Industrial Workers v. W. Indus. Maint., Inc.*, 707 F.2d 425, 430 (9th Cir. 1983).

Recklessness can be established when a leading attorney fails to check a subordinate's work and independently verify the facts and law. *See In re Girardi*, 611 F.3d 1027, 1062 (9th Cir. 2010); *see also In re Mitchell,* 901 F.2d 1179, 1188 (3d Cir. 1990) ("The fact that an attorney of record may make an agreement with some other person, attorney or layman, regarding a division of labor, does not diminish the attorney's *personal responsibility* for compliance with the rules of this court, *and liability for discipline if those rules are not complied with.*" (emphasis in original)).

## IV.    DISCUSSION

Here, Defendant argues that Plaintiff's attorneys, Ms. Cho and Mr. Lyon, acted in subjective bad faith by recklessly raising a frivolous argument. Defendant also argues that Ms. Cho and Mr. Lyon unreasonably multiplied proceedings. The Court agrees.

### A.    Frivolousness

First, the action was frivolous because the argument that Plaintiff purchased a bottle of Great Value Refined Avocado Oil "[o]n November 14, 2021 . . . from a Walmart store," was without factual basis. (Compl. ¶ 6; FAC ¶ 6.) Plaintiff actually purchased the avocado oil from Defendant's website. (*See* Harper Decl., Ex. B at 2, ECF No. 66-3.) Plaintiff even had a printed-out receipt five days before filing the Complaint, showing that the avocado oil was delivered from Walmart.com. (Harper Decl., Ex. D, ECF No. 94-5.) The merit of Plaintiff's action was based on the false fact that Plaintiff purchased the avocado oil from a Walmart store, and not a website, as otherwise Plaintiff would be compelled to arbitrate her claim per Walmart's Terms of Use for website orders. Because of this false fact, Plaintiff's claims were advanced through the litigation phase without merit and therefore were frivolous. *See Int'l Union of Petroleum & Industrial Workers v. W. Indus. Maint., Inc.,* 707 F.2d 425, 430 (9th Cir. 1983).

Case 2:24-cv-08211-RGK-MAR   Document 98   Filed 11/06/25   Page 3 of 5   Page ID
#:2241
Case 1:24-cv-00374-KES-SKO   Document 35   Filed 11/20/25   Page 13 of 15

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-08211-RGK-MAR | Date | November 6, 2025 |
|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | |

Plaintiff argues that the claim was not frivolous and not made in bad faith because Plaintiff actually made numerous in-store purchases, and that Plaintiff simply entered the wrong date corresponding to the in-store purchase in the Complaint. (Opp. Motion for Sanctions at 7–8.) The Court disagrees. Plaintiff's in-store purchases still do not change the fact that the Complaint and the FAC make a claim that Plaintiff purchased a bottle of avocado oil on November 14, 2021 from a Walmart store, when she actually did not do so. Accordingly, the action was based on an argument advanced without factual merit.

### B.   Recklessness

Second, Plaintiff's attorneys acted with recklessness. Ms. Cho stated that she prepared the initial Complaint with assistance from a staff member, a staff member included the November 4, 2021 date in the Complaint, that Ms. Cho "did not realize that the November 14 date corresponded to an online purchase, and not an in-store purchase, and did not double-check that fact," and therefore the complaint was filed "with that inadvertent error." (Cho Decl. ¶ 4, ECF No. 95-1.) Mr. Lyon claims that he only oversaw preparation of the amendments of the FAC and that "[he] never had reason to go back and check the Complaint or Amended Complaint to confirm that her in-store purchases were specifically identified until the April 24, 2025 meet and confer." (Opp. Motion for Sanctions at 3; Lyon Decl. ¶ 4, ECF No. 95-2.)

Counsel's failure to verify a material fact constitutes recklessness under § 1927. Ms. Cho and Mr. Lyon had an obligation to independently verify asserted facts in pleadings to ensure they were not frivolous. Just because Ms. Cho had a staff member prepare the date of purchase for the complaint does not undermine her responsibility to the Court to ensure the claim's truthfulness. *See In re Girardi*, 611 F.3d at 1062; Fed. R. Civ. P. 11(b). Furthermore, Mr. Lyon's argument that he did not catch the mistake in the FAC because he only oversaw the amendments in the FAC is not persuasive as "the existence of some supported allegations does not insulate Lead Attorneys from sanctions based on other, unsupported allegations in the FAC." *Lake v. Gates*, 130 F.4th 1064, 1068 (9th Cir. 2025).

Plaintiff argues that Ms. Cho and Mr. Lyon's failure to catch the false statement of fact in the initial complaint and the FAC was due to a mistake, or what Plaintiff claims to be "advertent oversight," and not bad faith. (Opp. Motion for Sanctions at 3–4). In support, Plaintiff cites a variety of cases that deal with incomparable situations. *See, e.g., Whelan v. BDR Thermea*, No. C-11-02146 EDL, 2011 WL 6182329, at *7 (N.D. Cal. Dec. 13, 2011) (excusing counsel's mistake in early-stage litigation for failure to file timely notice and declining to dismiss a claim with prejudice); *Zambrano v. City of Tustin*, 885 F.2d 1473, 1480 (9th Cir. 1989) (finding counsel did not act in bad faith by failing to apply for admission to the bar before appearing). These situations did not result in months of unnecessary litigation because of a false factual allegation. In fact, the court in *Whelan* even admits that attorney's fees may be an appropriate award: "there are other disciplinary ways to deal with any willful disregard of the law, such as attorney's fees awards to name just one." *Whelan*, 2011 WL 6182329, at *7.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | Date | November 6, 2025 |
|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | |

Accordingly, the Court finds that Ms. Cho and Mr. Lyon acted recklessly when they failed to verify a material fact in the litigation.

**C.     Unreasonable and Vexatious Multiplication of Proceedings**

Third, due to Plaintiff's failure to correct the fact that Plaintiff did not purchase avocado oil in store, and instead purchased it online, the parties engaged in multiple proceedings that unnecessarily augmented litigation. This false material fact led the parties to (1) litigate a motion to dismiss the FAC; (2) a motion opposing class certification; and (3) engage in discovery. (*See* Mot. to Dismiss, ECF No. 24; Mot. to Oppose Class Certification, ECF No. 44; Harper Decl. at 2, ECF No. 1-1.) This is evidence of "unnecessary filings and tactics once [the] lawsuit has begun." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996). Although counsel cannot be sanctioned due to the filing of the complaint alone, Ms. Cho and Mr. Lyon continued to represent to the Court, in proceedings beyond the complaint, that Plaintiff purchased the avocado oil in a Walmart store. *Id.* (*See, e.g.*, Opp. Mot. Dismiss at 11 ("[o]n November 14, 2021, Plaintiff . . . purchased a bottle of Great Value Refined Avocado Oil from a Walmart *store*.") (emphasis added). Simply put, Ms. Cho and Mr. Lyon's failure to verify the initial fact led the Court to resolve unnecessary disputes that would not have occurred had they simply stopped to check whether Plaintiff actually purchased the avocado oil on November 14, 2021.

Furthermore, after it was revealed that Plaintiff purchased the avocado oil on Walmart.com instead of in a Walmart store, rather than correcting the error, Plaintiff continued to advance her litigation position through an Opposition to a Motion to Compel Arbitration (DE No. 69) and an Opposition to a Motion to Decertify the Class (DE No. 86.) This again unreasonably multiplied proceedings and "violated § 1927's duty to correct or withdraw litigation positions after it becomes obvious that they are meritless." *In re Girardi*, 611 F.3d at 1064.

Therefore, Ms. Cho and Mr. Lyon acted in subjective bad faith by recklessly raising a frivolous argument and unreasonably multiplying proceedings. Accordingly, sanctions awarding attorney's fees are appropriate under § 1927.

Case 2:24-cv-08211-RGK-MAR    Document 98    Filed 11/06/25    Page 5 of 5    Page ID
#:2243
Case 1:24-cv-00374-KES-SKO    Document 35    Filed 11/20/25    Page 15 of 15

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | Date | November 6, 2025 |
|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | |

## V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Sanctions in the form of attorney's fees against Ms. Cho and Mr. Lyon. Defendant should submit a brief on the reasonability of attorney's fees no later than **ten days** from this Order's entry.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer                JRE/sh