# EXHIBIT 1

2026 WL 1356403
Only the Westlaw citation is currently available.
United States Court of Appeals, Ninth Circuit.

Mark TRAMMELL, individually
and on behalf of all those similarly
situated, Plaintiff - Appellant,

v.

KLN ENTERPRISES, INC., a
Minnesota corporation; dba, Wiley
Wallaby, Defendant - Appellee.

No. 24-6097
|
Argued and Submitted March
5, 2026 Pasadena, California
|
Filed May 15, 2026

Appeal from the United States District Court for the Southern District of California Marilyn L. Huff, District Judge, Presiding, D.C. No. 3:23-cv-01884-H-JLB

**Attorneys and Law Firms**

Charles C. Weller (argued), Charles C. Weller APC, San Diego, California, for Plaintiff-Appellant.

Jaikaran Singh (argued), Foley & Lardner LLP, San Diego, California; Kelsey Finn, Foley & Lardner LLP, Los Angeles, California; for Defendant-Appellee.

Before: Kim McLane Wardlaw, Ana de Alba, and Eric C. Tung, Circuit Judges.

**OPINION**

TUNG, Circuit Judge:

The defendant company in this case represented to consumers that its berry snacks product contained no artificial flavors. The plaintiff bought the product believing the representation to be true. It turned out, however, that the product contained an artificial flavor. Laboratory testing revealed that the product's flavoring was not naturally occurring but made from an artificial petroleum substrate. At least this is what the plaintiff alleged (albeit with more detail) in his complaint. The district

court concluded, however, that the plaintiff failed to state a claim and dismissed the complaint with prejudice. We disagree and reverse.

**I.**

Defendant KLN Enterprises, Inc. ("KLN") is the manufacturer of licorice products, including the Wiley Wallaby Very Berry Licorice (the "Product"). Plaintiff Mark Trammell alleged that he purchased Defendant's Product and that he reviewed the Product's labels before purchasing. The front label of the Product states, "Natural Strawberry & Raspberry Flavored Licorice," and "Naturally Flavored."[1] The back label of the Product states, "Free of ... Artificial Colors & Flavors."

*2 Trammell filed a putative class action complaint against KLN for: (1) violations of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, et seq.; (2) unjust enrichment; and (3) breach of express warranty. Trammell asserted claims individually and on behalf of a proposed California class.

Trammell alleged that the representations on the Product's packaging are false and misleading. He claimed that, although the Product represents that it is free of artificial colors and flavors, the Product contains an artificial flavor—specifically, he alleged, that the Product "contain[s] an ingredient known as 'malic acid' which is used as a flavoring in the Product[ ]" (ER-8, 29, ¶ 22) and that the "malic acid used in the[ ] Product[ ] is artificial" (ER-29, ¶ 22). According to the allegations, malic acid can form naturally or be artificially synthesized. Natural malic acid, derived from natural fruit sources, is commonly known as "L malic acid" (short for "2-Hydroxybutanedioic acid"). ER-29, ¶ 23. Artificial malic acid, derived from a petroleum substrate and other synthetic components, is commonly referred to as "DL malic acid" (short for "d-hydroxybutanedioic acid"). ER-30, ¶ 24. According to the complaint, "DL malic acid is manufactured in petrochemical plants from benzene or butane—components of gasoline and lighter fluid, respectively—through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts." ER-30, ¶ 24.

Trammell alleged that the Product was tested in a laboratory and that the testing results "establishe[d] that the malic acid used in these Products is DL malic acid, and not L malic

acid." ER-30, ¶¶ 27, 28. Trammell alleged that the "industry standard" method for testing, which the laboratory employed, is to detect the presence of the "D isomer" of malic acid, which is "not present in any amount in" natural malic acid and which would indicate "the use of artificial DL malic acid" in the food or beverage tested. ER-30, ¶ 26.

KLN moved to dismiss Trammell's complaint, and the district court granted the motion. Dismissing the complaint with prejudice, the district court provided two separate reasons for doing so. *First*, the district court concluded that Trammell "fail[ed] to plead with sufficient particularity that the malic acid used in the product is artificial," and that the allegations therefore "f[e]ll short of [Federal Rule of Civil Procedure] Rule 9(b)'s heightened pleading standard." ER-13–15.

*Second*, the district court held that Trammell failed to plausibly allege that a reasonable consumer would be misled by the Product's label: (1) the front label statements ("Naturally Flavored" and "Natural Strawberry & Raspberry Flavored Licorice") were "not unambiguously deceptive" because "a reasonable consumer would not interpret the front label as unambiguously representing that [the Product] does not contain artificial ingredients"; and (2) the back label statement ("Free of ... Artificial Colors & Flavors") was not deceptive because the back label "discloses both natural and artificial ingredients in plain text." *See* ER-15–19.

"Moreover," the district court observed, "nowhere on the front or back label does it state that the product is 'all natural,' '100% natural,' or 'free of artificial ingredients.' " ER-18. "Accordingly," the district court determined, "nothing about this product—a brightly colored, shelf-stable licorice candy —would lead a reasonable consumer to conclude that [the Product] is free of artificial ingredients when the product labels make no affirmative representations saying as such." *Id.* Concluding that the complaint lacked "a plausible claim of deception," the district court dismissed all three of Trammell's claims with prejudice. ER-16, 19.

 **\*3**  Trammell appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291, and the district court had jurisdiction pursuant to 28 U.S.C. § 1332. We review de novo the district court's dismissal of Trammell's complaint, "accepting all factual allegations in the complaint as true and construing them in the light most favorable to the" plaintiff. *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1096 (9th Cir. 2023) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 962 (9th Cir. 2016)).

## II.

We take each of the district court's bases of dismissal in turn and conclude that neither has merit.

## A.

The district court erroneously held that Trammell's complaint failed to satisfy Rule 9(b). That rule provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation omitted). We have interpreted Rule 9(b) as requiring the allegations to "give the defendant 'notice of plaintiffs' [theory of liability]' and [to] provide the court 'some assurance that the theory has a basis in fact.' " *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 794 (9th Cir. 2020) (quoting *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 989–90 (9th Cir. 2008)).

Trammell's allegations satisfy these requirements. The allegations set out: the "who" of the fraud (KLN); the "what" (KLN's representation that its Product is free of artificial colors and flavors); the "when" (around the time Trammell purchased the Product in May 2023); the "where" (the purchase occurred at a Target in Encinitas, California); and the "how" (the statements on the Product's label represented that the Product is "Naturally Flavored," "Natural Strawberry & Raspberry Flavored Licorice," and "Free of ... Artificial Colors & Flavors"). Trammell also explained "what is false about the statement" and "why it is false" (namely, that the Product, contrary to its labeling, contains an artificial flavor in the form of DL malic acid). *See* ER-27, 35–37.

Trammell also has given notice to the defendant and provided the court with "some assurance" that his theory of liability "has a basis in fact." *In re BofI*, 977 F.3d at 794 (quoting *Berson*, 527 F.3d at 989–90). Trammell alleged the specific laboratory ("Krueger Food Laboratories, Inc. of Chelmsford Massachusetts") that performed the testing, which revealed

the presence of DL malic acid; he provided a date of the testing ("on or about June 28, 2023"); he explained the qualifications of the laboratory ("a reputable independent food testing and analysis laboratory that has conducted testing for the food and beverage industry since 1984"); and he discussed the laboratory's "industry standard" methodology for detecting artificial malic acid by testing for the presence of the "D isomer" of malic acid, which is "not present in any amount" in natural malic acid. *See* ER-30, ¶¶ 26–28. Faced with these allegations, Defendant knows what Trammell's specific claims are, what it should defend against, and what it should seek to refute. With the details of the laboratory testing provided, Defendant could also conduct targeted discovery to test the validity of Trammell's factual claims. In short, the hurdles set by Rule 9(b) have been cleared.

 **\*4**  The district court nevertheless relied on three trial-level decisions to conclude that Trammell failed to satisfy Rule 9(b), but those decisions are non-precedential and inapposite. *See* ER-14–15 (citing *Scheibe v. Performance Enhancing Supplements, LLC*, No. 23-cv-00219-H-DDL, 2023 WL 3829694 (S.D. Cal. June 5, 2023); *Hawkins v. Coca-Cola Co.*, 654 F. Supp. 3d 290 (S.D.N.Y. Feb. 7, 2023); *Myers v. Wakefern Food Corp.*, No. 20-cv-08470-NSR, 2022 WL 603000 (S.D.N.Y. Mar. 1, 2022)). In *Scheibe*, the dismissed complaint did not identify "what [p]roducts were tested, when they were tested, [and] what laboratory performed the alleged testing." 2023 WL 3829694, at \*3. In *Hawkins*, the dismissed complaint failed to provide any details about the "amorphous 'laboratory analysis' " performed. 654 F. Supp. 3d at 306. And in *Myers*, the dismissed complaint lacked "any details whatsoever" about the alleged laboratory testing of the product. 2022 WL 603000, at \*4 ("[Plaintiff] does not, for instance, describe the testing methodology followed, the specific date, time, or place of the testing, who conducted the testing, the qualifications of the testers, etc."). Trammell has alleged these details; thus, these cases do not justify dismissal of Trammell's complaint.

### III.

The district court also erred in holding that Trammell's complaint failed to allege a plausible claim of consumer fraud. The district court applied the "reasonable consumer standard" that governs claims under the CLRA, ruled that Trammell failed to plausibly plead that a reasonable consumer would likely be deceived by the Product's labeling, and dismissed Trammell's CLRA claim as well as his unjust-enrichment

and breach-of-warranty claims because the latter claims were premised on the same fraud alleged under the CLRA.

"Under the reasonable consumer standard," a plaintiff must "show that members of the public are likely to be deceived." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (internal quotation omitted). Consumer deceit does not arise only from advertising that is "false" but also from "advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Id.* (bracket and internal quotation omitted). The pleadings must be "plausible"—"enough to raise a right to relief above the speculative level." *Id.* (citations omitted). And "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer [under California law]." *Id.*

Trammell plausibly pleaded that a reasonable consumer is likely to be deceived by a product that claims to be free of artificial flavors when that claim is (allegedly) not true. Pleading the presence of an artificial flavor in the Product— namely, artificial DL malic acid, as disclosed by laboratory tests, the details of which have been alleged—is enough to satisfy the reasonable-consumer standard on a motion to dismiss.

The arguments against this conclusion lack merit. *First*, the district court suggests that the Product's front label—which represents the Product to be "Natural Strawberry & Raspberry Flavored Licorice" and "Naturally Flavored"—is not false or misleading. But even if that is correct, the back label makes a specific claim about being "Free of ... Artificial Colors & Flavors," and as to *that* representation, Trammell has plausibly pleaded that it is false or misleading.

*Second*, the district court does not find the back label deceiving because, in its view, "Defendant discloses both natural and artificial ingredients in plain text on the product's back label." ER-18. That argument fails. The ingredients list on the back label does not disclose, on its face, which of the ingredients are artificial.[2] Indeed, despite claiming that artificial ingredients are plainly disclosed, neither the district court nor Defendant identifies *which* ingredients are artificial. Some ingredients, like "malic acid," may come in two forms—natural or artificial. But the list does not say which it is. A reasonable consumer, not being a chemist, is not in a position to make that assessment when buying the Product. *See Souter v. Edgewell Pers. Care Co.*, No.

22-55898, 2023 WL 5011747, at *2 (9th Cir. Aug. 7, 2023) ("The ordinary reasonable consumer has 'very little scientific background.' ") (quoting *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1174, 237 Cal.Rptr.3d 683 (2018)). What a reasonable consumer *can* understand is the Product's representation that there are *no* artificial flavors. When that clear representation is placed next to an ingredients list—a list that does not make apparent (1) which ingredients are flavors and (2) which of those ingredients are artificial—a reasonable consumer could plausibly be (mis)led into believing that the Product does not contain artificial flavors. If anything, the ingredients list here—which *does* include an ingredient called "natural flavor"—reinforces the Product's free-of-artificial-flavors statement. Despite all this, the district court concluded that a reasonable consumer would not be deceived by a claim that a product contains no artificial flavors when it allegedly does. That was error.

**\*5** *Third*, the district court observes that "nowhere on the front or back label does it state that the product is 'all natural,' '100% natural,' or 'free of artificial ingredients.' " ER-18. That point is true but irrelevant. Trammell's claim is not that the product falsely purports to be "all natural," "100% natural," or "free of artificial ingredients." Instead, Trammell claims that the product falsely represents to be free of artificial *flavors*, and he has alleged plausible facts to support it.

*Fourth*, the district court asserts that no reasonable consumer would believe that "a brightly colored, shelf-stable licorice candy" is "free of artificial ingredients." ER-18. But again,

the claim is not that the Product falsely purports to be free of artificial *ingredients*; the claim is about *flavors*. Colors and stability may go to the artificiality of the coloring and preservative; they do not necessarily bear on the artificiality of the flavors.

*Fifth*, Defendant argues that, under Food and Drug Administration ("FDA") regulations, "malic acid" is a mere "flavor enhancer," not a "flavoring agent." Appellee Answering Br. 32–40. But whatever category malic acid falls under in the FDA's regulatory scheme, the question is what a reasonable consumer expects, not what a regulatory expert in the food-and-beverage industry knows. And here, Trammell has plausibly alleged that a reasonable consumer expects the Product to be free of artificial flavors and that it would be misleading to that consumer if the Product contained an artificial petroleum substrate as a flavoring—whether as a flavor itself or as a flavor enhancement.

* * *

For the reasons above, we reverse the district court's judgment dismissing Plaintiff's complaint with prejudice, and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

**All Citations**

--- F.4th ----, 2026 WL 1356403

## Footnotes

1    While the parties' briefs did not mention this, the front label also states that the Product is "Free From Artificial Colors & Flavors." The district court took judicial notice of the entire packaging, which includes this statement. ER-5 n.1; ER-6–7.

2    The list includes: soluble corn fiber, allulose, rice flour, tapioca syrup, water, tapioca starch, glycerine, natural flavor, palm oil, malic acid, sodium citrate, sunflower lecithin, fruit and vegetable juice for color, citric acid, fumaric acid, potassium sorbate (preservative), tartaric acid, stevia. ER-6–7; Exhibit A, Motion to Dismiss Amended Complaint at 2–3, No. 3:23-cv-01884-H-JLB (S.D. Cal. June 14, 2024), ECF No. 23-4.

© 2026 Thomson Reuters. No claim to original U.S. Government Works.